1332  **IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
AT KANSAS CITY

| | |
|---|---|
| **ROADBUILDERS MACHINERY SUPPLY CO., INC.** ) <br> a Kansas Corporation, ) <br> 1001 S. 7th St. ) <br> Kansas City, KS 66105 ) <br>   ) <br> Plaintiff, ) <br>   ) Case No. _____ <br> vs. ) <br>   ) JURY TRIAL DEMANDED <br> **SANDVIK MINING and CONSTRUCTION USA, LLC** ) <br> a Delaware Corporation, ) <br> 3200 Highlands Pkwy Suite 200 ) <br> SMYRNA, GA 30082 ) <br>   ) <br> <u>Serve:</u> Registered Agent ) <br> Corporation Service Company ) <br> 2900 SW Wanamaker Drive ) <br> Suite 204 ) <br> Topeka, KS 66614 ) <br>   ) <br> Defendant. ) | |

**COMPLAINT**
(Franchise Claim - Case Code 196)

COMES NOW Plaintiff, Roadbuilders Machinery Supply Co., Inc., (hereinafter "Roadbuilders") by and through the undersigned counsel and for its Complaint against the defendant for the unlawful termination of Roadbuilders' construction and industrial equipment distributorship. In support thereof Plaintiff hereby states and alleges as follows:

1

## PARTIES AND JURISDICTION

1.  Plaintiff Roadbuilders Machinery Supply Co., Inc., ("Roadbuilders") is a corporation duly organized and existing under the laws of the State of Kansas with its' principle place of business at 1001 S. 7th St., Kansas City, KS 66105. Roadbuilders was and is a construction and industrial equipment dealership providing sales, parts and service to contractors, governmental agencies, and others.

2.  Defendant Sandvik Mining and Construction USA, LLC ("Defendant") is a Delaware Limited Liability Company registered to and doing business in Kansas. Defendant appointed Corporation Service Company, 2900 SW Wanamaker Drive, Suite 204, Topeka, KS, as its registered agent in Kansas.

3.  On March 19, 1999, "Sandvik Tamrock, LLC," a Colorado limited liability company, entered into a Distributor Sales and Service Agreement (the "Agreement") with Plaintiff. The Agreement states that "Sandvik Tamrock, LLC is a corporation organized under the laws of the state of Colorado." The Colorado Secretary of State records show that Sandvik Tamrock, LLC, is a foreign corporation (formed in Delaware) registered to transact business in Colorado. On or about 6-9-2005 the name was changed to "Sandvik Mining and Construction USA, LLC" which is the defendant named herein.

4.  This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §1332 (a)(1) because this action is between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5.      Defendant has and does transact business in Kansas such that it is subject to service of process pursuant to Kansas' Long Arm Statute and the Due Process Clause of the 14th Amendment to the U.S. Constitution.

6.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(1), (2) and (c) because a substantial part of the acts, errors and omissions giving rise to these claims occurred in this District.

## General Allegations

7.      Defendant manufactures industrial and construction equipment including Hydraulic Top Hammer Surface Drills which are large, self-contained, self-propelled machines weighing over 30,000 lbs. Defendant manufactures its products in a foreign country and imports them to the United States where they are marketed and sold through a distributor network.

8.      On March 19, 1999, Plaintiff and Defendant entered into a Distributor Sales and Service Agreement (the "Agreement"). The Agreement granted Plaintiff the exclusive right to market and sell Top Hammer Surface Drills manufactured by Defendant in the territories of Kansas and the counties in Missouri located west of and including Putnam, Sullivan, Linn, Chariton, Howard, Cooper, Monteau, Morgan, Camden, Laclede, Webster, Christian, and Taney.

9.      The Agreement required Roadbuilders to, among other things: (a) maintain dealerships where Defendant's products could be displayed, sold, serviced, and repaired; (b)

to provide delivery, training and instruction to customers, (c) to perform warranty service work in satisfaction of Defendant's warranty obligations, (d) to train employees on how to market, sell and service Defendant's products; and, (e) to perform repairs on Defendant's products, (f) to purchase, store and maintain a maintain a stock of products.

10. The Agreement required Defendant to sell products to Roadbuilders at discounted prices, provide training, and provide a warranty on products.

11. Defendant authorized Roadbuilders to use Defendant's trademarks, logos and brand names in conjunction with the sales, and service of Defendant's products.

12. In performance of and reliance on the Agreement, Roadbuilders invested in marketing Defendant's products, training its sales and service force, stocking equipment, associating its good will with Defendant's products, and in all other ways used its best efforts to sell and service Defendant's products.

13. Roadbuilders created a market for Defendant's products in the territory.

14. Defendant never complained about Roadbuilders' facilities, sales, marketing, stocking, warranty work, service work, payment, credit, security or any other aspect of its business, and has never alleged any breach of the Agreement.

15. Roadbuilders did not breach the Agreement or any related policy, bulletin or procedure, and substantially complied with all essential and reasonable requirements imposed upon it by the Agreement.

16. On July 25, 2022, Defendant emailed Roadbuilders a surprise termination letter cancelling the Agreement. The letter states that "equipment sales will cease immediately" but that Roadbuilders could order parts until 12/31/22 on a COD basis. The letter did not provide any reason or good cause for termination, did not give advance notice or warning, and did not give Roadbuilders a chance to cure any cause for termination.

17. After receiving the termination letter, Roadbuilders advised Defendant that "We have been a successful Tamrock dealer for over 20 years. We have not received any details or reason for the cancellation. Is this the final decision and if so is there any reason other than Sandvik has decided to move in another direction." Defendant responded by confirming that "The business decision is final," and for Roadbuilders to "cease all quotes for new equipment."

18. Defendant appointed a replacement dealer, Continental Equipment Company, to take over Roadbuilders' territory including the pending sales orders that Roadbuilders had working.

## COUNT I
## WRONGFUL TERMINATION

19. Roadbuilders hereby incorporates by reference as though fully set forth herein, all allegations contained in all paragraphs.

20. Defendant terminated Roadbuilders's dealership without good cause, without proper notice and without a chance to cure any alleged cause for termination all in violation of the Kansas Outdoor Power Equipment Act (K.S.A. 16-1301 *et. seq.*) ("KOPEA").

21. As a direct and proximate result of Defendant's aforesaid violation Roadbuilders has suffered and will continue to suffer: (1) lost business profits, (2) lost good will, (3) lost investment in training, educating and employing personnel to sell, promote and service Defendant equipment and products and generally build the market for Defendant's products, (4) litigation costs, attorney fees, interest expense, expert fees and other costs, expenses and charges.

**WHEREFORE**, Plaintiff Roadbuilders prays for judgment against defendant Defendant in an amount exceeding $75,000 which will fairly and justly compensate Roadbuilders for its damages, interest (see, K.S.A. §16-201 and 6 Del. C. §2301), costs, attorneys' fees and expert fees as provided in K.S.A. §16-1308 and other statues and/or laws, for punitive damages arising from Defendant's wilful and/or malicious violation of the KOPEA, and for all such other and further relief as is allowable at law or equity.

## COUNT II
## BREACH OF CONTRACT

22. Roadbuilders hereby incorporates by reference as though fully set forth herein, all allegations contained in all paragraphs herein.

23. The provisions of the KOPEA are supplemental to the Agreement.

24. Defendant breached the Agreement by terminating it without proper notice or good cause.

25. As a direct and proximate result of Defendant's breach Roadbuilders has suffered and will continue to suffer: (1) lost business profits, (2) lost good will and reputation, (3) lost

investment in training, educating and employing personnel to sell, promote and service Defendant equipment and products, (4) litigation costs, attorney fees, interest expense, expert fees and other costs, expenses and charges.

**WHEREFORE**, Plaintiff Roadbuilders prays for judgment against Defendant in an amount exceeding $75,000 which will fairly and justly compensate Roadbuilders for its damages, interest (see, K.S.A. §16-201 and 6 Del. C. §2301), costs, attorneys' fees, expert fees and for all such other and further relief as is allowable at law or equity.

## JURY DEMAND

Plaintiff demands a trial by jury.

                                          Respectfully submitted,

                                          /s/  Michael Healy
                                          Michael P. Healy        KS Bar 13881
                                          The Healy Law Firm, LLC
                                          200 NW Missouri Road, Suite 200
                                          Lee's Summit, Missouri 64086
                                          (816) 472-8800 (Telephone)
                                          (816) 472-8803 (Facsimile)
                                          mphealy@healylawyers.com
                                          ATTORNEYS FOR PLAINTIFF