UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROADBUILDERS MACHINERY AND SUPPLY CO., INC. , <br><br> Plaintiff, <br><br> v. <br><br> SANDVIK MINING AND CONSTRUCTION USA, LLC, <br><br> Defendant. | Case No. 2:22-cv-2331-HLT-TJJ |

### MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Quash the Deposition of Taylor Siegel, Esq., or in the Alternative, Motion for a Protective Order (ECF No. 54). Defendant requests an order quashing Plaintiff's amended notice to take the deposition of Defendant's in-house legal counsel for its Mining and Rock Solutions' group. Defendant alternatively requests entry of a protective order under Fed. R. Civ. P. 26(c) limiting the scope of any such deposition. For the reasons set forth below, Defendant's request to quash Mr. Siegel's deposition is granted.

**I.      Factual and Procedural History**

Plaintiff, an industrial and construction equipment dealer, brings this wrongful termination and breach of contract action against Defendant, a supplier of mining, construction machinery and equipment. Plaintiff alleges Defendant terminated their dealer franchise agreement on July 25, 2022 without good cause, without proper notice, and without a chance for Plaintiff to cure any alleged cause for termination, all in violation of the Kansas Outdoor Power Equipment Act, K.S.A. 16-1301 *et seq*. ("KOPEA"). Pertinent to this motion, Defendant has asserted affirmative defenses that Plaintiff failed to mitigate its damages, and Defendant acted in

good faith, in an appropriate, businesslike and commercially reasonable manner, and without malice or intent to injure Plaintiff.

On March 27, 2023, Plaintiff served a Notice (ECF No. 47) to take the depositions of six individuals, including Taylor Siegel, who has been employed as in-house legal counsel for Defendant's Mining and Rock Solutions' group[1] since September 2021. On April 6, 2023, Plaintiff served an Amended Notice to Take Depositions (ECF No. 49) noticing Mr. Siegel for deposition on April 18, 2023.

On April 6, 2023, the Court conducted a telephone discovery conference at the joint request of the parties to address the discovery disputes raised by the parties, including Plaintiff's request to depose Defendant's in-house counsel, Mr. Siegel. At the conference, the Court inquired into Plaintiff's proposed deposition questioning of Mr. Siegel and his position as in-house counsel in Defendant's legal department. The Court concluded briefing was necessary to decide this dispute and set deadlines for filing and briefing this motion.

**II.     Law Regarding Depositions of Opposing Counsel**

The deposition of an attorney for a party is not prohibited by the Federal Rules of Civil Procedure.[2] And while the Federal Rules exempt privileged material from discovery, they "do not themselves exempt attorneys from being a source of discoverable facts."[3] "Attorneys with discoverable facts, not protected by attorney-client privilege or work product, are not exempt

---

[1] Under the dealer agreement, Plaintiff sold and serviced products in Defendant's Surface Drills Business Line, which is one of seven business lines included in Defendant's Mining and Rock Solutions' Group.

[2] *See* Fed. R. Civ. P. 30(a)(1) ("A party may, by oral questions, depose *any person* . . . without leave of court except as provided in Rule 30(a)(2).") (emphasis added).

[3] *Fugett v. Sec. Transp. Servs., Inc.*, No. 14-2291-JAR, 2015 WL 419716, at *2 (D. Kan. Feb. 2, 2015) (quoting *United Phosphorous, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 247 (D. Kan. 1995)).

from being a source for discovery by virtue of their license to practice law or their employment by a party to represent them in litigation."[4]

Courts have, however, entered protective orders prohibiting the depositions of opposing counsel, recognizing the potential for abuse in deposing an opponent's attorney by encouraging "delay, disruption of the case, harassment, and unnecessary distractions into collateral matters."[5] In *Shelton v. American Motors Corp.*,[6] the Eighth Circuit Court of Appeals held that depositions of opposing counsel should be limited to circumstances where the party seeking to take the deposition has shown that: "(1) no other means exist to obtain the information except to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case."[7] In *Boughton v. Cotter Corp.*,[8] the Tenth Circuit affirmed this heightened requirement for deposing opposing counsel, holding that ordinarily the trial court has the discretion under Fed. R. Civ. P. 26(c) to issue a protective order against the deposition of opposing counsel when any one or more of the three criteria set forth in *Shelton v. American Motors Corp.* are not met. Courts applying the *Shelton/ Simmons* criteria

---

[4] *Id.*

[5] *Nelson v. Hardacre*, 312 F.R.D. 609, 614 (D. Kan. 2016); *DeWitt v. Sw. Bell Tel. Co.*, No. 12-2605-SAC, 2014 WL 695744, at *6 (D. Kan. Feb. 24, 2014); *Ed Tobergte Assocs. Co. v. Russell Brands, LLC,* 259 F.R.D. 550, 554 (D. Kan. 2009).

[6] 805 F.2d 1323, 1327 (8th Cir. 1986).

[7] *Shelton,* 805 F.2d at 1327. Some courts in this district have referred to this heightened standard as the "*Simmons* criteria" as they were first utilized in this district in *Simmons Food, Inc. v. Willis*, 191 F.R.D. 625, 630 (D. Kan. 2000). *Nelson*, 312 F.R.D. at 614.

[8] 65 F.3d 823, 829–30 (10th Cir. 1995).

place the burden of establishing the three criteria on the party seeking to take the deposition of opposing counsel.[9]

**III.        Application of the Heightened Standard to Defendant's In-House Counsel**

Although the *Boughton* and *Shelton* cases affirmed application of the heightened standard for deposing opposing counsel to in-house counsel,[10] neither implied a *per se* rule that in-house counsel are considered "opposing counsel." Therefore, as a threshold matter, the Court determines whether the heightened *Shelton/Simmons* criteria should be applied to Mr. Siegel, who is Defendant's in-house legal counsel for its Mining and Rock Solutions' group. Plaintiff argues that Mr. Siegel is not "opposing counsel," but rather an in-house lawyer in Defendant's legal department who was a fact participant in, and witness to, Defendant's termination process, its decision to reject Plaintiff's email request for reconsideration, and likely the reinstatement plan.

In determining whether the heightened standard should be applied to in-house counsel, courts have considered in-house counsel's position, duties, and involvement in the litigation, and the underlying events giving rise to the litigation.[11] Other determinative factors courts have

---

[9] *Ed Tobergte Assocs.,* 259 F.R.D. at 555.

[10] *See Boughton*, 65 F.3d at 829 (finding the record supported the lower court's treatment of in-house counsel as "opposing counsel" because he operated solely as an attorney, made no operating decisions, was not authorized to make commitments on behalf of the company without prior approval from management, and merely acted as a spokesperson); *Shelton*, 805 F.2d at 1330 (finding defendant's supervising in-house counsel "had nothing to do with [the] lawsuit except to represent her client. She did not design the jeep or have any duties in relation to the design of the jeep; nor, of course, was she a witness to the accident.").

[11] *See Epling v. UCB Films, Inc.,* 204 F.R.D. 691, 693–94 (D. Kan. 2001) (finding in-house counsel should be treated as opposing counsel because he acted as a legal advisor to the defendants in connection with the litigation and was responsible for managing the lawsuits); *Rahn v. Junction City Foundry, Inc.*, No. 00–2128–KHV, 2000 WL 1679419 (D. Kan. Nov.3, 2000) (finding in-house counsel was "opposing counsel" for purposes of applying the *Simmons* criteria based on his involvement as a legal advisor to the

found instructive are whether the attorney to be deposed was listed as a potential witness in the party's Rule 26(a)(1) initial disclosures[12] or appeared as a Rule 30(b)(6) deposition witness.[13] Additional considerations are whether the rationale for applying the heightened standard to the deponent are present, such as likely delay, disruption of the case, harassment, unnecessary distractions into collateral matters, and/or potential for abuse.[14]

The Court concludes the heightened standard for deposing opposing counsel should be applied to Mr. Siegel. While Mr. Siegel is not counsel of record for Defendant in this case, he currently serves as in-house legal counsel for Defendant's Mining and Rock Solutions' group, which includes the Surface Drilling Business Line, the products of which were previously sold and serviced by Plaintiff. Mr. Siegel is not listed on Defendant's Rule 26(a)(1) initial disclosures as an individual likely to have discoverable information. Nor has he appeared as Defendant's Rule 30(b)(6) witness. In his affidavit, Mr. Siegel describes his role as in-house counsel as including "all in-house counsel legal functions, including drafting and negotiating commercial contracts, real estate, human resources, strategic guidance to key stakeholders and legal

---

defendant who retained him to advise it regarding the plaintiff's internal sexual harassment allegations and to participate in the defendant's investigation of the complaints.).

[12] *See Fugett*, 2015 WL 419716, at *3 (declining to apply the heightened standard for the deposition of opposing counsel to general counsel who was listed as a potential witness in the party's Rule 26(a)(1) initial disclosures); *McGuire v. American Family Mut. Ins. Co.*, No. 08–1072–JTM–KMH, 2009 WL 1044945, at *3 (D. Kan. April 20, 2009) (declining to apply heightened standard to defendants' counsel because he was listed as a potential witness in their Rule 26(a)(1) disclosures and voluntarily revealed attorney-client communications in support of their "advice of counsel" defense).

[13] *See Coffeyville Res. Ref. & Mktg. v. Liberty Surplus Ins. Corp.*, 261 F.R.D. 586 (D. Kan. 2009) (finding heightened standard did not apply to counsel who previously appeared as its Rule 30(b)(6) deposition witness).

[14] *See Nelson*, 312 F.R.D. at 617 (finding prevention of "abuse, delay, disruption, harassment, or unnecessary distractions into collateral matters" was best achieved by application of the *Shelton* criteria to counsel).

compliance, and advising on a variety of commercial disputes with customers and suppliers, among many other functions."[15] Based upon his reported duties that include providing advice to Defendant on commercial disputes, potential deposition questioning of Mr. Siegel would likely delve into matters Defendant may claim are protected by the attorney-client privilege. Defendant has already objected on attorney-client privilege grounds during the deposition of Mr. Martin in response to deposition questions regarding what advice Mr. Siegel provided him.[16] Any deposition of Mr. Siegel would therefore be ripe for objections and potential abuse inviting "delay, disruption of the case, harassment, and unnecessary distractions into collateral matters."[17] The Court will therefore apply the heightened standard and consider the *Shelton/Simmons* criteria in determining whether to permit Plaintiff to depose Mr. Siegel.

IV.     **Whether Plaintiff Has Met its Burden Under the *Shelton/Simmons* Criteria**

Plaintiff, as the party seeking the deposition of Defendant's in-house counsel, has the burden to show that all three *Shelton/Simmons* criteria are satisfied.[18] The majority of Plaintiff's response is devoted to arguments that Defendant waived attorney-client privilege by asserting affirmative defenses of failure to mitigate and good faith. Plaintiff also makes a brief argument that Mr. Siegel is a fact witness with relevant non-privileged information and Defendant has thwarted its efforts to obtain some of the information from other sources. The Court will address each of Plaintiff's and Defendant's arguments in turn in the context of the *Shelton/Simmons* criteria.

---

[15] Siegel Aff. ¶ 7.

[16] Martin Dep. 245 (ECF No. 59-2).

[17] *Hay & Forage Indus. v. Ford New Holland, Inc.*, 132 F.R.D. 687, 689 (D. Kan. 1990).

[18] *Ed Tobergte Assocs.*, 259 F.R.D. at 555.

### A.     Whether Other Means Exist to Obtain the Information

The first criteria is whether other means exist to obtain the information sought, apart from deposing counsel. This requires a showing that taking opposing counsel's deposition is the "only reasonably practical means available for obtaining the information."[19]

Plaintiff argues it should be permitted to depose Mr. Siegel because he is a fact witness with direct knowledge about Defendant's termination process, its decision to reject Plaintiff's reconsideration request, and its decision to discuss reinstatement.[20] Plaintiff references the deposition testimony of Defendant's Sales Manager for Surface Drills-East, Avery Martin, who testified Mr. Siegel reviewed and approved the termination notice sent to Plaintiff, that Mr. Martin received advice from Mr. Siegel regarding the contents of the termination notice, and that Mr. Martin relied on Mr. Siegel to make sure the legalities of terminating the agreement with Plaintiff were followed prior to the termination.

The Court finds the information Plaintiff seeks from Mr. Siegel can be obtained from other sources, specifically three other decision-maker level witnesses who are not in Defendant's legal department. Mr. Siegel is not the exclusive source of information as he was not the only employee involved with Defendant's decision to terminate Plaintiff's dealer franchise, Plaintiff's request for reconsideration, and the reinstatement offer. As noted above, Plaintiff has already taken the deposition of Avery Martin, who testified he, Ville Keinanen, Steven Gorsuch, and Mr. Siegel were the four individuals involved in Defendant's decision to terminate Plaintiff's

---

[19] *Id.*

[20] Plaintiff also asserts conclusorily that Mr. Siegel should be deposed because of his knowledge of Defendant's legal department operations. The Court dismisses that assertion for lack of any substantive support.

agreement.[21] Ville Keinanen is the Business Line Manager for Surface Drills, and Steven Gorsuch is the distribution manager.  Mr. Martin testified Mr. Keinanen asked him to draft the termination notice and he didn't think Mr. Siegel made any changes to it after reviewing it.[22] Plaintiff has noticed the depositions of Mr. Keinanen and Mr. Gorsuch.[23] These decision-makers are fact witnesses and an alternate source of the information regarding the termination, reconsideration request, and reinstatement offer.

    Plaintiff also claims it seeks to depose Mr. Siegel regarding Defendant's denial of any knowledge of dealer protection laws and Mr. Martin's reliance on in-house counsel for his knowledge of those laws. During Mr. Martin's deposition as Defendant's corporate representative, he testified regarding Defendant's knowledge of dealer protection laws. Mr. Martin stated he would rely on in-house counsel to educate him about dealer protection laws.[24] However, Mr. Martin testified he didn't really learn anything about dealer protection laws from Defendant's legal department until Defendant was sued in this case under the Kansas Outdoor Power Equipment Act, and that was the first he heard of it.[25]  Mr. Martin also testified he never asked Defendant's legal department about dealer protection laws, and therefore the legal department didn't tell him anything regarding dealer protection laws prior to terminating Plaintiff.[26] The Court is therefore not convinced that Mr. Siegel is the only source of information

---

[21] Martin Dep. 145, 244.

[22] Martin Dep. 143, 146, 149.

[23] *See* Pl.'s Am. Notice to Take Depositions (ECF No. 49).

[24] Martin Dep. 237–38.

[25] Martin Dep. 236.

[26] Martin Dep. 237–38.

concerning Defendant's knowledge of dealer protection laws, especially given that he had only been employed as Defendant's in-house counsel for ten months prior to Defendant terminating Plaintiff's dealer franchise, and he previously had not worked in the mining, construction, or other heavy equipment company or dealer industry.[27]

Plaintiff claims Mr. Siegel ought to be aware of Defendant's policies and procedures for managing dealer protection act claims, referencing a 2016 California lawsuit filed against Defendant for violation of state dealer protection laws, or he should at least know who among Defendant's employees would be aware of such policies and procedures. This is not a persuasive reason to permit deposing Mr. Siegel, as he would not have even been employed with Defendant or worked in the power equipment dealer industry at the time of the 2016 California lawsuit. And again, Mr. Martin testified briefly regarding his experiences with dealer protection laws.[28] He or others employed with Defendant at the time of the California lawsuit would likely be better sources of information concerning it than Mr. Siegel.

Plaintiff additionally argues Defendant has thwarted or dodged efforts to obtain evidence through written discovery inquiring about Defendant's knowledge of dealer laws and its affirmative defenses. A review of the specific discovery responses cited by Plaintiff, however, does not fully support this argument. While Defendant did not produce and states it does not possess a "list of Persons employed by [Defendant] . . . whose job description included review of Dealer Agreement, or regulatory and legal compliance" in response to Plaintiff's Second Request for Documents No. 19, Defendant did provide a substantive response to Plaintiff's First Requests for Admission No. 49 identifying who in its organization would have knowledge of dealer

---

[27] Siegel Aff. ¶ 3–4.

[28] Martin Dep. 233–35.

protection laws. Defendant states that prior to Plaintiff filing suit, "Avery Martin was the only person in its surface drills group generally aware that some States had legal restrictions on when and/or how it can terminate," and "the other representatives involved in [Plaintiff's] termination were unaware that Kansas law might contain restrictions on terminating [Plaintiff]."[29] As indicated by the deposition testimony quoted above, Mr. Martin has already been deposed and Defendant's counsel did allow Mr. Martin to answer some limited questions regarding Defendant's knowledge of dealer protection laws that bordered on attorney-client privileged communications.

Plaintiff has not shown that deposing Mr. Siegel is the only reasonably practical means available for obtaining information about Defendant's decision to terminate Plaintiff's dealer franchise agreement, its decision to reject Plaintiff's reconsideration request, its decision to discuss reinstatement, and/or Defendant's knowledge of dealer protection laws.

### B.    Whether the Information Sought is Relevant and Non-Privileged

Plaintiff must also show that the information it seeks from in-house counsel is relevant and non-privileged. Plaintiff argues generally that Mr. Siegel has relevant evidence because he was a fact participant in the termination process, the decision to reject reconsideration, and probably in the reinstatement plan. Thus, Plaintiff contends Mr. Siegel likely has some evidence relevant to Defendant's reinstatement and good faith affirmative defenses.  Defendant argues much of the information Plaintiff seeks to obtain from Mr. Siegel is both irrelevant and privileged.

However, the primary thrust of Plaintiff's argument is that Defendant has waived its attorney-client privilege with regard to the subject matter at issue. The implication of this

---

[29] Def's Resp. & Objs. to Pl.'s First Req. for Admission (ECF No. 59-12) at 8–9.

argument is that the information Plaintiff seeks from Mr. Siegel is privileged, but the privilege has been waived. Plaintiff argues Defendant waived its privilege on these subjects by asserting affirmative defenses that Plaintiff failed to mitigate its damages by rejecting Defendant's offer of reinstatement (5th Affirmative Defense) and that Defendant acted in good faith (6th Affirmative Defense).[30]

Defendant argues Plaintiff's opposition brief focuses only on the issue of waiver, and relies on inapposite case law and unsupported assumptions. Moreover, Defendant states it has not asserted that it relied on the advice of legal counsel to support any of its affirmative defenses and therefore no privileged communications involving Mr. Siegel are "integral" to its affirmative defenses.  Defendant states it offered reinstatement post-litigation and Plaintiff rejected reinstatement for reasons unrelated to the "sincerity" of such offer.

Courts generally apply one of three approaches to determine whether a party has waived the attorney-client privilege by placing protected information "at issue."[31] In *Frontier Refining, Inc. v. Gorman-Rupp Co.,*[32] the Tenth Circuit summarized the three approaches as follows:

> The first of these general approaches is the "automatic waiver" rule, which provides that a litigant automatically waives the privilege upon assertion of a claim, counterclaim, or affirmative defense that raises as an issue a matter to which otherwise privileged material is relevant. The second set of generalized approaches provides that the privilege is waived only when the material to be discovered is both relevant to the issues raised in the case and either vital or necessary to the opposing party's defense of the case. Finally, several courts have [] concluded that

---

[30] Because the Court concludes that Defendant has not waived the attorney-client privilege with regard to the subject matter at issue, the Court need not address the relevance prong of this second *Shelton/Simmons* criteria.

[31] *Seneca Ins. Co. v. W. Claims, Inc.*, 774 F.3d 1272, 1275 (10th Cir. 2014).

[32] 136 F.3d 695, 699–700 (10th Cir. 1998).

11

a litigant waives the attorney-client privilege if, and only if, the litigant directly puts the attorney's advice at issue in the litigation.[33]

The Tenth Circuit has not expressly adopted an approach for assessing at-issue waiver, but it has applied the second intermediate approach, articulated in the Eastern District of Washington case *Hearn v. Rhay*[34] in addressing state law privilege claims.[35] Under the *Hearn* test, each of the following three conditions must exist to find waiver: (1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to its defense.[36] A court should find that the party asserting a privilege has impliedly waived that privilege through its own affirmative conduct when the party "places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would [be] manifestly unfair to the opposing party."[37] The Kansas Supreme Court has also recognized that the state-law privilege may be waived when the party claiming the privilege puts the "fact of the

---

[33] *Id.* (internal citations omitted).

[34] 68 F.R.D. 574 (E.D. Wash. 1975).

[35] *See Seneca Ins. Co. v. W. Claims, Inc.*, 774 F.3d 1272, 1276 (10th Cir. 2014) (applying *Hearn* because both parties agreed that Oklahoma courts would apply a version of the *Hearn* test); *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 701 (10th Cir. 1998) (applying Wyoming law).

[36] *Hearn*, 68 F.R.D. at 581.

[37] *Id.*

12

communication at issue,"[38] but has not adopted or rejected a more specific test for at-issue waiver.

Applying the *Hearn* test, the Court finds Defendant has not waived the attorney-client privilege as argued by Plaintiff. Defendant has not asserted an affirmative defense that places advice of counsel at issue or implicates legal advice. Defendant has not put the fact of any attorney-client communication at issue that would, in fairness, require Plaintiff be allowed to examine those protected communications. And, "the mere fact that privileged material is relevant to a matter that is raised as an issue in connection with the assertion of an affirmative defense is insufficient to trigger a waiver."[39]

Defendant is not attempting to use protected information as both a sword and a shield. The case Plaintiff cites in support of its argument for waiver, *Doe v. USD No. 237*,[40] is thus easily distinguishable from the facts of this case. In *Doe*, the defendant school district sought to use its pre-litigation investigation and report to support its affirmative defense that the school district exercised reasonable care to prevent and correct harassing behavior, while at the same time invoking attorney-client privilege to deny the plaintiffs access to that report.[41] Defendant's mere assertion of its affirmative defense that Plaintiff failed to mitigate its damages by refusing to accept the offer of reinstatement does not present a sword-shield inconsistency as existed in *Doe*. To the extent Plaintiff is arguing Defendant waived any privilege regarding the "sincerity"

---

[38] *State ex rel Stovall v. Meneley*, 271 Kan. 355, 376, 22 P.3d 124, 142 (2001) (citing *Hearn*, 68 F.R.D. at 579–81).

[39] *Williams v. Sprint/United Mgmt. Co.*, 464 F. Supp. 2d 1100, 1107 (D. Kan. 2006).

[40] *Doe v. USD No. 237*, No. 16-2801-JWL-TJJ, 2019 WL 1925107, at *5–8 (D. Kan. Apr. 30, 2019).

[41] *Id.* at *7.

of Defendant's offer of reinstatement, that issue was raised by Plaintiff and cannot be used as a basis for waiver of Defendant's privilege. With regard to its assertion of failure to timely mitigate, Defendant has not asserted that it relied upon the advice of its in-house counsel or otherwise placed communications with its counsel at issue so as to waive attorney-client privilege.

The Court further finds Defendant's assertion of its good faith as an affirmative defense does not waive privilege on that issue. Again, Defendant has not placed the advice of counsel at issue or argued it relied upon in-house counsel's advice or privileged communications as part of its good faith defense. Courts in this District have held that merely asserting a good faith defense does not waive privilege.[42] The Court rejects Plaintiff's argument that Defendant has waived its attorney-client privilege by merely asserting a good faith affirmative defense.

### C.     Whether the Information is Crucial to the Preparation of Plaintiff's Case

The third and final *Shelton/Simmons* criterion calls for the Court to determine whether the information likely to be obtained by deposing Mr. Siegel is crucial to the preparation of Plaintiff's case. Plaintiff argues Mr. Siegel's knowledge of dealer protection laws goes to the heart of Defendant's affirmative defense that Plaintiff failed to mitigate by refusing the offer of reinstatement. It also argues his knowledge of dealer protection laws and involvement with Defendant's decision to reject reconsideration and later offer of reinstatement are vital to Defendant's good faith affirmative defense. As demonstrated by the discussion above, the Court is not persuaded that any exclusive information Mr. Siegel may have on these issues is crucial or vital to rebutting Defendant's affirmative defenses.

---

[42] *Martley v. City of Basehor, Kansas*, No. 19-2138-DDC-GEB, 2021 WL 5918916, at *8 (D. Kan. Dec. 15, 2021); *Williams*, 464 F. Supp. 2d at 1105.

The Court finds Plaintiff has failed to satisfy its burden of establishing the *Shelton/Simmons* criteria to permit the deposition of Defendant's in-house legal counsel, Mr. Siegel.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Quash the Deposition of Taylor Siegel, Esq. (ECF No. 54) is granted.

IT IS SO ORDERED.

Dated June 2, 2023, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge