UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROADBUILDERS MACHINERY AND SUPPLY CO., INC., <br><br> Plaintiff, <br><br> v. <br><br> SANDVIK MINING AND CONSTRUCTION USA, LLC, <br><br> Defendant. | Case No. 2:22-cv-2331-HLT-TJJ |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Compel Plaintiff to Sufficiently Respond to Certain Discovery Requests and Comply with the Court's Order Dated April 7, 2023 (ECF No. 55). Defendant seeks an order pursuant to Fed. R. Civ. P. 26, 34, and 37 overruling Plaintiff's objections and compelling Plaintiff to (1) produce documents responsive to Second Requests for Production of Documents ("RFPs") 36, 37, and 38; and (2) serve an amended certificate of service for the 5,014 emails it previously produced to Defendants. For the reasons set forth below, Defendant's motion is granted in part, denied in part, and moot in part.

**I.      Factual and Procedural History**

Plaintiff, an industrial and construction equipment dealer, brings this wrongful termination and breach of contract action against Defendant, a supplier of mining, construction machinery and equipment. Plaintiff alleges Defendant terminated the Distributor Sales and Service Agreement on July 25, 2022 without good cause, without proper notice, and without a chance to cure any alleged cause for termination all in violation of the Kansas Outdoor Power Equipment Act, K.S.A. 16-1301 *et seq.* ("KOPEA").

On April 6, 2023, at the joint request of the parties pursuant to D. Kan. Rule 37.1(a),[1] the Court held a telephone discovery conference on nine discovery-related disputes, including disputes concerning RFPs 36–38 and Plaintiff's production of the parties' email correspondence. The Court ordered the parties to further confer in good faith regarding RFPs 36 and 37 based upon the guidance provided at the conference. With respect to RFP 38, the Court advised the parties that Plaintiff's vagueness objection to producing its organizational chart would likely be overruled and Plaintiff ordered to produce it or serve a supplemental response stating none exists. As to Plaintiff's production of the email correspondence between the parties, Plaintiff was ordered to "serve an amended certificate of service explaining why it produced the 5,014 emails between the parties and indicating whether the production was a Rule 26(e) supplemental production of its Rule 26(a)(1) initial disclosures, or whether some of the documents are being produced in response to Defendant's discovery requests."[2] The Court's order stated that the deadlines for filing motions to compel discovery remained unchanged and were 30 days from service of the responding party's responses and objections, as provided in D. Kan. Rule 37.1(c).

Plaintiff served its responses to Defendant's Second RFPs 36–38 on March 20, 2023.[3] The parties conferred again on April 11, 2023 as ordered by the Court, but a resolution could not be reached. Defendant timely filed this motion to compel on April 19, 2023.[4]

---

[1] D. Kan. Rule 37.1(a) requires the party intending to file a discovery-related motion to first contact and arrange for a telephone conference with the judge and opposing counsel before filing the motion. The April 6, 2023 telephone discovery conference satisfied this requirement.

[2] Order Memorializing Rulings from April 7, 2023 Discovery Conference (ECF No. 51) at 3.

[3] *See* Certificate of Service (ECF No. 44).

[4] The Court finds Defendant has conferred prior to filing its motion as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2.

II.     **Legal Standards**

Federal Rule of Civil Procedure 37(a)(3)(B) permits a party seeking discovery to move for an order compelling an answer, designation, production, or inspection. The motion may be made if a party fails to produce documents as requested under Rule 34.[5] An evasive or incomplete disclosure, answer, or response is treated as a failure to disclose, answer, or respond.[6] The party filing the motion to compel need only file the motion and draw the court's attention to the relief sought.[7] At that point, the burden is on the nonmoving party to support its objections with specificity and, where appropriate, with reference to affidavits and other evidence.[8]

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The information sought must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable.[9]

For discovery purposes, relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or

---

[5] Fed. R. Civ. P. 37(a)(3)(B)(iv).

[6] Fed. R. Civ. P. 37(a)(4).

[7] *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL, 2005 WL 731070, at *4 (D. Kan. Mar. 30, 2005).

[8] *Id.*

[9] *No Spill, LLC v. Scepter Candada, Inc.*, No. 2:18-CV-2681-HLT-KGG, 2021 WL 5906042, at *3 (D. Kan. Dec. 14, 2021).

defense.[10] Relevance is often apparent on the face of the discovery request and often dictates which party bears the burden of showing either relevancy or the lack thereof.  If the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[11] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[12] Relevancy determinations are generally made on a case-by-case basis.[13]

### III.     Discovery Requests in Dispute

#### A.      Defendant's Second RFP 36 (stockholder information)

Defendant's Second RFP 36 asks Plaintiff to produce documents "sufficient to describe the identity of any and all stockholders of [Plaintiff], including the shares held by each such stockholder and the total shares outstanding, at all times from April 19, 1999, to July 25, 2022." Plaintiff asserted relevancy, temporally overboard, and unduly burdensome objections, and stated it has no responsive documents. It further responded that it has produced its audited financial statements from 2016–2021 that contain information about stockholders and shares.

---

[10] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[11] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, No. 09-CV-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[12] *Id.*

[13] *Id.*

The Court finds the relevance of the information requested in RFP 36 about the identity of Plaintiff's stockholders and number of shares held for a 24-year time period is not apparent on its face, and thus Defendant bears the burden to show the relevance. Defendant argues the identity of Plaintiff's stockholders, and the number of shares held and outstanding, is relevant to its unclean hands defense, Plaintiff's damage claim, and request for punitive damages. Defendant argues if Plaintiff itself previously violated the same Kansas statute it alleges Defendant violated, then Plaintiff has unclean hands and this too would impact Plaintiff's damage and punitive damage claims.[14] Defendant argues K.S.A. 16-1306(a) required Plaintiff to seek Defendant's consent if it transferred a controlling interest at any time between April 19, 1999 and July 25, 2022. Defendant claims it has reason to believe Plaintiff violated the statute based on the deposition testimony of Bryan McCoy, Plaintiff's President, and it is entitled to explore through discovery whether any transfer of control took place since 1999 and, if so, whether Plaintiff timely sought and received Defendant's consent.

The Court finds, subject to the limitations discussed below, Defendant has sufficiently shown the relevancy of information about Plaintiff's stockholders and ownership share percentages to the extent they indicate whether and when the majority stockholder(s) changed. This information is relevant to whether there was a transfer of controlling interest in Plaintiff's business during the relevant time period. The information may show whether Plaintiff itself violated the statute by transferring a controlling interest in its business without Defendant's

---

[14] The Kansas statute at issue is K.S.A. 16-1306, which provides in pertinent part: "[n]o supplier . . . may terminate, cancel or fail to renew without good cause." Defendant argues RFP 36 seeks relevant information because, pursuant to K.S.A. 16-1306(a), "good cause" exists if a "retailer has transferred a controlling interest in the retailer business without the supplier's consent."

consent, which Defendant may contend constitutes good cause for Defendant's termination of the dealer franchise agreement under K.S.A. 16-1306(a).

Although Plaintiff contends otherwise, Defendant is entitled to seek discovery on this additional potential defense even if Defendant has not yet specifically plead it in its answer. This is consistent with one of the purposes of discovery, namely, to discover or develop the facts of a case, which may lead to previously unconsidered defenses or claims.[15] Contrary to Plaintiff's argument, Defendant also does not have to show it would prevail on this potential defense before obtaining discovery on it.[16] Defendant has reason to believe there has been a transfer of Plaintiff's controlling interest based upon the deposition testimony of Plaintiff's president, Bryan McCoy, who testified at this February 2023 deposition he has not been Plaintiff's largest shareholder since 1999, but he is currently the largest shareholder.[17] Prior to becoming the largest shareholder, his father, Phil McCoy, was the largest shareholder.[18] He also testified the transition was through some stock being transferred and some stock purchased.[19]

Plaintiff objects that this information can be obtained from documents it has already produced—its 2016–2021 audited financial statements—which Plaintiff asserts provide

---

[15] *See Foxfield Villa Assocs., LLC v. Robben*, No. 12-2528, 2018 WL 398449, at *2 (D. Kan. Jan. 12, 2018) ("[O]ne purpose of discovery is to develop the facts of a case. Those facts may lead to previously unconsidered affirmative defenses or claims.").

[16] Plaintiff raises a legal issue regarding whether Defendant's unclean hands defense could be a viable defense in a case seeking only legal damages rather than equitable relief, *see Fina Oil & Chem. Co. v. Pester Mktg. Co.*, No. 95-1367-JTM, 1997 WL 225900, at *35 (D. Kan. Apr. 25, 1997) (lengthy discussion of the defense of unclean hands and when it may not be a viable defense), but the Court need not decide this issue to permit Defendant to seek discovery on the potential defense.

[17] McCoy Dep. 54 (ECF No. 55-2).

[18] *Id.*

[19] *Id.*

6

significant information regarding stock ownership and changes each year throughout that period.[20] The parties have not submitted and therefore the Court has not had an opportunity to review the referenced financial statements. But Plaintiff does not explain its rationale for limiting its response to the 2016–2021 time frame, and the Court is not persuaded the referenced financial statements are fully responsive to RFP 36.

Plaintiff also objects to the scope of RFP 36 as including documents that are not relevant. The Court finds RFP 36 is overly broad insofar as it requests the identify of "any and all" stockholders and the number of shares held by each stockholder. The only information needed to determine whether a change in Plaintiff's controlling interest has occurred is information pertaining to Plaintiff's largest or majority stockholder. It would not require a list identifying "any and all" Plaintiff's stockholders. Nor would the number of shares held by *each* stockholder be necessary for this determination. The Court sustains Plaintiff's relevancy objection in part and limits the scope of RFP 36 to the documents showing the identity of Plaintiff's largest or majority stockholder(s) and percentage of shares held each year throughout the relevant time frame.

Plaintiff also objects to the 24-year time period sought by RFP 36 as temporally overbroad and unduly burdensome when viewed in proportion to the probative value. The Court agrees with Plaintiff that the requested lengthy 24-year time period is overbroad and not proportional to the needs in this case. The deposition questioning of Mr. McCoy seems to focus primarily upon the time period of late 2018 and 2019, soon after the death of Mr. McCoy's father. And it is highly unlikely that a transfer of controlling interest in Plaintiff many years earlier would have given Defendant good cause to terminate *in 2022*. The Court will therefore

---

[20] See Pl.'s Resp. (ECF No. 58) at 7.

sustain Plaintiff's temporally overbroad objection and limit RFP 36 to the ten-year time period January 1, 2012 through July 25, 2022.

Defendant's motion to compel Plaintiff to produce documents responsive to RFP 36 is therefore granted in part and denied in part. Plaintiff's relevancy and temporal overbreadth objections are sustained in part. Plaintiff is ordered to produce documents responsive to RFP 36 but limited in scope to those showing the identity of Plaintiff's *largest or majority* stockholder(s) (and percentage of shares held) each year throughout the ten-year time period January 1, 2012 through July 25, 2022.

### B.    Defendant's Second RFP 37 (trustee identity)

Defendant's Second RFP 37 asks Plaintiff to produce "documents sufficient to describe the identity of the trustee of any trust owning shares of stock in Roadbuilders on behalf of Phil McCoy or Bryan McCoy at all times from April 19, 1999, to July 25, 2022." Plaintiff asserted relevance and overbreadth objections to this request "because it does not matter who the Trustee of the Phil McCoy trusts was or is [and] especially does not matter who said Trustee was over twenty years ago." Plaintiff referred Defendant to the deposition of Bryan McCoy where he testified that he was the trustee of his father's trust, and that Steve Bahr is the trustee of Bryan McCoy's trust. Plaintiff argues Defendant has not explained the relevance of the trust documents and identity of the trustees for 24 years back to 1999.

Defendant argues Plaintiff's response is evasive and deficient as it only identifies two trustees. Bryan McCoy confirmed during his deposition that he has copies of the documents evidencing when he became the trustee of his father's trust. Defendant asserts it should be allowed to probe the veracity of Mr. McCoy's testimony on the subject by obtaining the documents described during his deposition. Plaintiff has claimed that the original owner, Phil

8

McCoy, never owned stock in the company but his trust did. Defendant argues it is entitled to discover the identity of the trustee who controls the trust if Plaintiff is claiming its "controlling interest" has always been held in a trust.

Defendant has the burden to show the relevance of the trustee identity documents sought by RFP 37 as relevancy is not apparent on its face. Defendant has shown Plaintiff is claiming Phil McCoy was its largest stockholder prior to his death and he "did not own any [of Plaintiff's] stock but his trust did."[21] This suggests the trustee of the trust would have controlled the shares of stock of Plaintiff's largest stockholder. This is relevant to Defendant's unclean hands defense argument that Plaintiff transferred a controlling interest in its business without Defendant's consent. Furthermore, Plaintiff's President Bryan McCoy was not able to provide this information at his deposition. When he was asked who was the original trustee of his father's trust and the date when he became the trustee, Mr. McCoy responded that he would have to ask the corporate attorney.[22] He further testified that he has copies of the documents showing this information.[23]

The Court finds Defendant has sufficiently shown the relevancy of documents identifying the trustee of any trust owning shares of stock in Plaintiff on behalf of Phil McCoy or Bryan McCoy. If Plaintiff is claiming its largest stockholder's shares were held in a trust, then Defendant should be permitted discovery of documents describing the identity of the trustee(s) of those trusts, who would have authority over those shares. However, Defendant has not explained the relevance of the identity of trustees going back to 1999. Plaintiff's temporal overbreadth

---

[21] Ex. A to Def.'s Mot. to Compel (ECF No. 55-1) at 2.

[22] McCoy Dep. 27.

[23] McCoy Dep. 28.

objection to RFP 37 is therefore sustained. Consistent with its ruling regarding RFP 36 above, the Court limits the scope of RFP 37 to the ten-year time period January 1, 2012 through July 25, 2022.

Defendant's motion to compel Plaintiff to produce documents responsive to RFP 37 is therefore granted in part and denied in part. Plaintiff is ordered to produce documents sufficient to describe the identity of the trustee of any trust owning shares of its stock on behalf of Phil McCoy or Bryan McCoy, but limited to the ten-year time period January 1, 2012 through July 25, 2022.

### C. Defendant's Second RFP 38 (organizational chart)

Defendant's Second RFP 38 asks Plaintiff to produce an "organizational chart" that shows its current internal structure. Plaintiff objected to the request as vague. At the April 7, 2023 discovery conference, the Court advised the parties that Plaintiff's vagueness objection to producing its organizational chart would likely be overruled and Plaintiff ordered to produce it or serve a supplemental response stating none exists.

In its motion to compel, Defendant requests an order overruling Plaintiff's objection and compelling it to either produce responsive documents in its possession, custody or control, or state that after diligent search no such documents exist. In its response, Plaintiff re-asserts its vagueness objection and states it produced its Articles of Incorporation, Annual Reports, and Audited Financial Statements which contain a section titled "Organization and Operations." Plaintiff further states that during the parties' conferral, Plaintiff advised Defendant "it does not have an organization chart."[24]

---

[24] Pl.'s Resp. (ECF No. 58) at 5.

The party objecting to a discovery request as vague or ambiguous has the burden to show such vagueness or ambiguity.[25] A party responding to a discovery request "should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized" in the discovery requests.[26]

Plaintiff's objections to the terms "organizational chart" or "internal structure" on the bases of vagueness and ambiguity are overruled. Attributing the ordinary business definition to such terms, it should be clear that an "organizational chart" is a visual representation that represents the "internal structure" of Plaintiff's company, i.e., displaying the reporting or relationship hierarchy of employees or positions within the company. Plaintiff is ordered to either produce its organizational chart or serve a supplemental discovery response to RFP 38 stating it does not have or maintain an organizational chart.

**IV.      Service of Amended Certificate of Service Regarding Plaintiff's Email Production**

Defendant's motion also requests the Court order Plaintiff to serve an amended certificate of service explaining the 5,014 emails it produced to Defendant, as ordered by the Court in its April 7, 2023 Order. Since Defendant filed this motion, Plaintiff has filed a Certificate of Service (ECF No. 60) on April 27, 2023 stating that it produced 3,503 emails sent/received between the parties under Rule 26(e) and the documents may contain documents responsive to Defendant's First RFPs 1, 2, 6–11, 14, 17, 24 and 26. The Court finds Plaintiff has sufficiently complied with the Court's April 7, 2023 Order regarding the prior email production, and Defendant's motion to compel Plaintiff to comply with that provision of the Order is now moot.

---

[25] *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 310 (D. Kan. 1996).

[26] *Id.*

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel Plaintiff to Sufficiently Respond to Certain Discovery Requests and Comply with the Court's Order Dated April 7, 2023 (ECF No. 55) is granted in part, denied in part, and moot in part.

**IT IS FURTHER ORDERED** that Plaintiff shall produce documents responsive to Defendant's Second RFP 36 limited in scope to those showing the identity of Plaintiff's *largest or majority* stockholder(s) (and percentage of shares held) each year throughout the ten-year time period January 1, 2012 through July 25, 2022.

**IT IS FURTHER ORDERED** that Plaintiff shall produce documents responsive to Defendant's Second RFP 37 sufficient to describe the identity of the trustee of any trust owning shares of its stock on behalf of Phil McCoy or Bryan McCoy, but limited to the ten-year time period January 1, 2012 through July 25, 2022.

**IT IS FURTHER ORDERED** that Plaintiff shall either produce its organizational chart, or serve a supplemental discovery response to Defendant's Second RFP 38 stating it does not have or maintain an organizational chart.

**IT IS FURTHER ORDERED** that all production ordered herein shall be accomplished by Plaintiff **within fourteen (14) days of the date of this Order**.

**IT IS FURTHER ORDERED** that Plaintiff has sufficiently complied with the Court's April 7, 2023 Order regarding the prior email production, and Defendant's motion to compel Plaintiff to comply with that provision of the Order is now moot.

IT IS SO ORDERED.

Dated June 12, 2023, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge