UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROADBUILDERS MACHINERY AND SUPPLY
CO., INC. ,

        Plaintiff,

        v.

SANDVIK MINING AND CONSTRUCTION
USA, LLC,

        Defendant.

Case No. 2:22-cv-2331-HLT-TJJ

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's First Motion to Compel Discovery (ECF No. 56). Plaintiff seeks an order pursuant to Fed. R. Civ. P. 37 overruling Defendant's objections and compelling Defendant to produce documents responsive to Plaintiff's Second Requests for Production of Documents ("RFP") Nos. 2–5, 7–10, 12, 17, 20 and 22.  For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.

**I.**        **Factual and Procedural History**

Plaintiff, an industrial and construction equipment dealer, brings this wrongful termination and breach of contract action against Defendant, a supplier of mining, construction machinery and equipment. Plaintiff alleges Defendant terminated the Distributor Sales and Service Agreement on July 25, 2022 without good cause, without proper notice, and without a chance to cure any alleged cause for termination all in violation of the Kansas Outdoor Power Equipment Act, K.S.A. 16-1301 *et seq*. ("KOPEA"). Plaintiff's agreement and relationship with Defendant was managed as part of Defendant's surface drills business line.

On April 6, 2023, at the joint request of the parties pursuant to D. Kan. Rule 37.1(a),[1] the Court held a telephone discovery conference on nine discovery-related disputes, including their disagreement concerning the scope of several of Plaintiff's Second RFPs[2] and Defendant's proposed limitation to its surface drills group. The Court ordered the parties to further confer in good faith regarding the scope of the RFPs to see if they could reach some compromise taking into account, among other things, the Court's guidance that the scope would likely be somewhat broader than just the surface drills product line group, but narrower than all Defendant's product lines.[3]   The Court's order stated that the deadlines for filing motions to compel discovery remained unchanged and were 30 days from service of the responding party's responses and objections, as provided in D. Kan. Rule 37.1(c).

Defendant served its objections and responses to Plaintiff's Second RFPs on March 20, 2023.[4] The parties conferred again on April 11, 2023, as ordered by the Court, and Defendant served supplemental responses and objections to Plaintiff's Second RFPs on April 14, 2023,[5] but a resolution could not be reached. Plaintiff timely filed this motion to compel on April 19, 2023.[6]

---

[1] D. Kan. Rule 37.1(a) requires the party intending to file a discovery-related motion to first contact and arrange for a telephone conference with the judge and opposing counsel before filing the motion. The April 6, 2023 telephone discovery conference satisfied this requirement.

[2] At issue were Plaintiff's Second RFPs 1-4, 8, 9, 19, 20 (Defendant's knowledge of dealer protection laws); RFPs 5, 7, 9, 10, 12, 17 (differences in Defendant's treatment of Plaintiff versus other dealers); RFPs 6 and 13 (content and revisions to dealer agreement); and RFP 22 (Defendant's net worth information).

[3] *See* Order Memorializing Rulings from April 6, 2023 Discovery Conference (ECF No. 51) at 4.

[4] *See* Certificate of Service (ECF No. 42).

[5] *See* Certificate of Service (ECF No. 53).

[6] The Court finds Plaintiff has conferred prior to filing its motion as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2.

Plaintiff asks the Court to overrule Defendant's objections to Plaintiff's Second RFPs 2–5, 7–10, 12, 17, 20 and 22, and to order Defendant to produce documents responsive to those RFPs.

## II.        Legal Standards

Federal Rule of Civil Procedure 37(a)(3)(B) permits a party seeking discovery to move for an order compelling an answer, designation, production, or inspection. The motion may be made if a party fails to produce documents as requested under Rule 34.[7] An evasive or incomplete disclosure, answer, or response is treated as a failure to disclose, answer, or respond.[8] The party filing the motion to compel need only file the motion and draw the court's attention to the relief sought.[9] At that point, the burden is on the nonmoving party to support its objections with specificity and, where appropriate, with reference to affidavits and other evidence.[10]

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The information sought must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable.[11]

---

[7] Fed. R. Civ. P. 37(a)(3)(B)(iv).

[8] Fed. R. Civ. P. 37(a)(4).

[9] *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL, 2005 WL 731070, at *4 (D. Kan. Mar. 30, 2005).

[10] *Id.*

[11] *No Spill, LLC v. Scepter Canadada, Inc.*, No. 2:18-CV-2681-HLT-KGG, 2021 WL 5906042, at *3 (D. Kan. Dec. 14, 2021).

For discovery purposes, relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[12] Relevance is often apparent on the face of the discovery request and often dictates which party bears the burden of showing either relevancy or the lack thereof.  If the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[13] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[14] Relevancy determinations are generally made on a case-by-case basis.[15]

## III.     Discovery Disputes

### A.      Defendant's Limitation of its Discovery Responses to its "Surface Drills Business Line"

Plaintiff requests the Court rule upon the parties' dispute concerning Defendant's unilateral limitation narrowing the scope of its search for and production of documents responsive to Plaintiff's Second RFPs 2–5, 7–10, 12, 17, and 20. These requests seek documents concerning dealer protection laws and Defendant's knowledge thereof, non-performance or breach letters Defendant sent to other dealers, and Defendant's termination of other dealers.

---

[12] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[13] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, No. 09-CV-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[14] *Id.*

[15] *Id.*

Defendant originally objected to these requests as overly broad, unduly burdensome, and not relevant as they "seek information unrelated to the surface drills group at issue."  In addition, the discovery responses indicated they were limited to Defendant's surface drills business line. After conferring with Plaintiff following the April 6, 2023 discovery conference, Defendant served supplemental responses that continue to object to these RFPs as unduly burdensome and not proportional to the needs of the case as they seek information "unrelated to the surface drills group at issue." Defendant further states it has not searched for or produced any documents that may be responsive to these RFPs "for its other business lines" based on its objections.

In its motion to compel, Plaintiff states that it prefers the Court overrule Defendant's objections entirely but recognizes, as the Court suggested at the discovery conference, that paring down the scope of the discovery requests to certain product lines may be appropriate. Plaintiff reports that during the parties' conferring it offered to reduce the scope of the discovery requests to just Defendant's surface drills product line plus four other product line groups. Plaintiff argues that it sold more than one of Defendant's product lines, and therefore its discovery requests should not be limited, as proposed by Defendant, to just Defendant's surface drills product line. Plaintiff suggests, if the Court imposes a scope limitation, it should limit RFPs 2–5, 7–10, 12, 17, and 20 to Defendant's following five product lines: (1) Stationary crushers and screens, (2) Mobile crushers and screens, (3) Underground drill rigs and bolters, (4) Surface drill rigs, and (5) Underground loaders and trucks.  In response to Plaintiff's motion to compel, Defendant re-asserts its objections and argues in support of its limitation to its surface drills business line.

1.    **Plaintiff's Second RFPs 2–4, and 20 (Regarding Defendant's knowledge of dealer protection laws)**

Plaintiff's Second RFPs 2–4 and 20 all request discovery regarding Defendant's knowledge of dealer protection laws.  Briefly summarized, RFP 2 asks Defendant to produce documents that explain or discuss how dealer protection laws impact how Defendant manages or interacts with its dealers/ distributors. RFP 3 seeks documents sent to Defendant by anyone that mention dealer protection laws or any regulatory or legal restrictions on how Defendant manages or interacts with its dealer/ distributors, or which suggests such laws/regulations might impact any dealer agreement.  RFP 4 asks Defendant to produce documents prepared and/or presented by Defendant that mention or explain how dealer protection laws may impact how suppliers/manufacturers manage or interact with their dealers/distributors. RFP 20 seeks documents provided by or on behalf of Defendant to any employee for the purpose of educating or informing such employees about dealer protection laws.

After conferring with Plaintiff, Defendant served supplemental responses that continue to object to these discovery requests as unduly burdensome and not proportional to the needs of the case as they seek information "unrelated to the surface drills group at issue." Defendant further states it has not searched for or produced any documents that may be responsive to these RFPs "for its other business lines" based on its objections.[16]

The Court has reviewed RFPs 2–4, and 20 and finds Plaintiff has sufficiently shown they seek documents relevant to Plaintiff's claim that Defendant knew termination of the agreement

---

[16] Defendant also objected to the requests as seeking information protected from discovery by the attorney-client privilege and/or attorney work product doctrine. Defendant states in its response that it provided Plaintiff with a privilege log on December 23, 2022 that includes, among other things, two entries for the lone email chain containing privileged discussions from its in-house counsel, Taylor Siegel, in response to Mr. McCoy's email asking if the "decision is final."

was prohibited and proceeded recklessly (punitive damages).[17]  However, the Court finds the requests are overly broad, unduly burdensome, and disproportionate to the needs of this case because they seek excessively wide-ranging documents and lack any temporal limitations. As written, they would require Defendant to search for and produce responsive documents for its entire company, comprised of more than 600 employees.[18] Nor do the requests contain meaningful temporal limitations. For example, RFP 2 specifically states "[t]his request is not limited in time." The discovery requests if applied to all of Defendant's business lines over time without limitation are likely to encompass a substantial number of documents totally irrelevant to the claims and defenses in this case. The burden would be disproportionate to the needs of this case and outweigh the potential benefit of the requested discovery. Some limitation of the disputed discovery requests is therefore appropriate and necessary. The Court is thus called upon to decide between the competing discovery scope (business lines) limitations proposed by the parties.

Defendant argues its surface drills business line is the only business line at issue in this case and Plaintiff's discovery requests are all centered around the theme that the surface drills business line knew or should have known about dealer laws in general and KOPEA specifically.

---

[17] The Court is not persuaded by Plaintiff's argument that Defendant's knowledge of dealer protection laws is relevant to the affirmative defense that Plaintiff failed to mitigate by rejecting Defendant's reinstatement offer. Plaintiff argues Defendant "knew the law and terminated [Plaintiff] anyway, which proves reinstatement was an insincere litigation tactic and [Plaintiff's] rejection was reasonable under the circumstances." Pl.'s Mot. (ECF No. 56) at 7. Regardless of whether the reinstatement offer was an "insincere litigation tactic," Defendant's mere offer of reinstatement would not render Plaintiff's rejection of the offer reasonable. The case Plaintiff cites, *Toledo v. Nobel-Sysco, Inc.*, 892 F.2d 1481 (10th Cir. 1989), to support its argument is unavailing. *Toledo* is not only distinguishable factually (it involved an employment reinstatement offer), but more significantly, the form and circumstances of the reinstatement offer that the court found troubling were that it was conditioned upon the plaintiff dropping his discrimination claim, passing a polygraph test, and a physical exam. *Id.* at 1488. No conditions were attached to Defendant's reinstatement offer at issue here.

[18] Martin Aff. ¶ 3 (ECF No. 62-2).

Defendant points out that its corporate representative, one of the only four surface drills employees involved in the decision to terminate Plaintiff's agreement, has already testified that he was generally familiar with dealer protection laws but did not have reason to believe that one applied here. Therefore, knowledge from employees in Defendant's other business line groups would not be relevant.

Plaintiff contends it should be allowed discovery showing knowledge by employees in other business lines because the knowledge of all employees who knew about dealer laws is imputed to Defendant. In response, Defendant argues its business lines operate independently and there is no single source for searching for responsive documents. It provides the following example to show lack of communication between Defendant's different business lines:  a Linked-In message from one of its sales managers in its mobile crushers and screeners business line who contacted Plaintiff about becoming a dealer *three weeks after* Defendant's surface drills business group terminated Plaintiff's dealer agreement.[19]

Plaintiff has convinced the Court that it should be permitted discovery beyond just Defendant's surface drills business line for its discovery requests seeking information regarding Defendant's knowledge of dealer protection laws. Defendant alleges in this case that it was not aware of the Kansas statute at issue (KOPEA) until Plaintiff filed this case. In doing so, Defendant put at issue its knowledge or lack of knowledge of the KOPEA at termination. The Court finds, subject to the limitations discussed below, the information requested in RFPs 2–4 and 20 is relevant to Plaintiff's claim for punitive damages and its arguments that Defendant knowingly violated KOPEA or should have been aware of it when it decided to terminate

---

[19] The Court does not find such anecdotal information convincing. That one of Defendant's sales managers is out of touch with a termination of another of Defendant's business lines reveals nothing regarding the company generally. Nor does the example address the imputation of knowledge issue.

Plaintiff's dealer agreement. Plaintiff has further convinced the Court that these discovery requests should not be limited, as Defendant argues, to just Defendant's surface drills business lines company division because the knowledge of certain of Defendant's employees (as explained below) in other business lines would also be imputed to Defendant.

The Kansas Supreme Court has recognized that corporate knowledge may come from an agent or employee.[20] The key to imputation under Kansas law is whether the fact learned is material to the agent or employee's duties,[21] and imputation is not dependent on whether the employee is a managerial employee.[22] The Tenth Circuit has likewise held that "[i]t is well established that a corporation is chargeable with the knowledge of its agents and employees acting within the scope of their authority."[23] This knowledge is imputed to all the corporation's departments even if *"each department operate[s] as its own island."*[24] Section 5.03, comment c, of the Restatement (Third) of Agency is instructive on this issue:

> An organization's large size does not in itself defeat imputation, nor does the fact that an organization has structured itself internally into separate departments or divisions. Organizations are treated as possessing the collective knowledge of their employees and other agents, when that knowledge is material to the agents' duties,

---

[20] *City of Ark. City v. Anderson*, 762 P.2d 183, 189 (Kan. 1988) ("A corporation is an artificial person; it may acquire knowledge only through real people—its officers, agents, or employees.").

[21] *Kelly v. Morton Salt, Inc.*, No. 6:20-CV-01352-TC, 2023 WL 172129, at *5 (D. Kan. Jan. 12, 2023) (citing *Golden Rule Ins. Co. v. Tomlinson*, 335 P.3d 1178, 1190 (Kan. 2014)); Restatement (Third) of Agency § 5.03 (2006).

[22] *See Kelly*, 2023 WL 172129, at *5 (finding under Kansas law the knowledge of non-managerial employees may be imputed to corporate defendant if the fact learned is material to the agent or employee's duties).

[23] *Western Diversified Servs., Inc. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1276 (10th Cir. 2005) (citing *Sawyer v. Mid-Continent Petroleum Corp.*, 236 F.2d 518, 520 (10th Cir. 1956)).

[24] *Western Diversified*, 427 F.3d at 1276 (emphasis added).

however the organization may have configured itself or its internal practices for transmission of information.[25]

Because imputation of corporate knowledge is not bound by the corporation's internal structure or divisions, Defendant's justification for limiting its discovery responses seeking corporate knowledge of dealer protection laws to its surface drills business line company division is not persuasive. The Court finds that the imputation of knowledge to Defendant through all its employees, acting within the scope of their authority, justifies permitting discovery (to the extent otherwise allowable) into Defendant's other business lines even if those employees were not directly involved in the decision to terminate Plaintiff's dealer agreement and even if Defendant's business lines all operate independently of each other. The Court finds Plaintiff's requests for discovery refuting Defendant's position it was unaware of the Kansas dealer protection law—through evidence its employees in other business lines had knowledge material to their duties—is relevant and should be permitted. The Court therefore rejects the discovery limitation proposed by Defendant to its surface drills business line.

As previously discussed, the Court also rejects Plaintiff's broad requests seeking discovery from all of Defendant's business lines. As an alternative therefore, Plaintiff suggests limiting the scope of the disputed discovery requests to Defendant's following five product business lines: (1) Stationary crushers and screens, (2) Mobile crushers and screens, (3) Underground drill rigs and bolters, (4) Surface drill rigs, and (5) Underground loaders and trucks.

The Court accepts Plaintiff's suggestion limiting RFPs 2–4, and 20 to Defendant's five business lines identified above. Plaintiff alleges it sells equipment from more than one of

---

[25] Restatement (Third) of Agency § 5.03 cmt. c (2006).

Defendant's product lines. Taking an all-or-nothing approach in the briefing, Defendant offers no compelling arguments that Plaintiff's suggested compromise scope limitation to five of Defendant's business lines would impose an undue burden or should otherwise be rejected by the Court.  Nor does Defendant propose any other scope limitation. Furthermore, as the Court alluded to during the discovery conference, Defendant's in-house counsel Taylor Siegel, who was one of Defendant's employees involved in the decision to terminate Plaintiff's agreement, serves as in-house counsel for multiple business lines, including the surface drills, underground drilling, underground load and haul business lines, and a few others.[26] That three of the business lines Mr. Siegel serves are included in the five suggested by Plaintiff also lends credence to adopting this proposed scope limitation.

Mindful of the burden upon Defendant of searching for and producing responsive documents for five business lines, the Court will place additional temporal restrictions on RFPs 2–4 and 20. Consistent with its June 12, 2023 Memorandum and Order[27] limiting Defendant's discovery requests, the Court will similarly limit Plaintiff's RFP 2–4 and 20 to the ten-year time period January 1, 2012 through July 25, 2022.  The burden on Defendant to produce responsive documents from more than ten years ago is outweighed by any arguable benefit of this information to Plaintiff.

Plaintiff's motion to compel with respect to its Second RFPs 2, 3, 4, and 20 is granted in part and denied in part. Defendant is ordered to search for and produce all non-privileged

---

[26] Mr. Siegel is in-house legal counsel for Defendant's Mining and Rock Solutions' group, which includes "Surface Drills Business Line along with Underground Drilling, Underground Load and Haul, Rock Tools, Mechanical Cutting, Parts & Services and Digital Mining Technologies."  Siegel Aff. ¶ 9 (ECF No. 54-2).

[27] ECF No. 65.

documents responsive to Plaintiff's Second RFPs 2, 3, 4, and 20, but limited to the ten-year time period January 1, 2012 through July 25, 2022, and further limited to the following five business line company divisions: (1) Stationary crushers and screens, (2) Mobile crushers and screens, (3) Underground drill rigs and bolters, (4) Surface drill rigs, and (5) Underground loaders and trucks.

### 2. Plaintiff's Second RFP 5 (Regarding subsequent change of terms in dealer agreements)

Plaintiff's Second RFP 5 asks Defendant to produce documents that explain, mention, or discuss why Defendant changed the terms of its dealer agreements for surface drill dealers/distributors since entering the agreement with Plaintiff.  Defendant objects to the request as protected by the attorney-client privilege and/or work product doctrine, ambiguous, overly broad, and unduly burdensome as it is not limited in time or scope and seeks documents unrelated to the surface drills group at issue. In its supplemental response, Defendant adds that the request is not proportional to the needs of the case and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant notes the request would call for it to search for and produce documents concerning, among other things, changes to a dealer's product offerings, changes to a dealer's pricing, and changes to a dealer's territory.  Defendant further states it has not searched for or produced responsive documents for any dealer in its surface drills business line "in any other capacity" based upon its objections.[28]

The Court sustains Defendant's objections insofar as RFP 5 would call for it to produce documents concerning changes to a dealer's product offerings, pricing, and territory—changes unrelated and not relevant to the alleged violations of the dealer protection law in this case.

---

[28] Def.'s Suppl. Resp. (ECF No. 62-6) at 7–8.

However, Defendant's "in other capacity" limitation in its response makes it unclear what Defendant excluded from its document search and production in response to RFP 5. Therefore, Plaintiff's motion to compel is granted in part, insofar as Defendant is ordered to search for and produce all non-privileged documents responsive to RFP 5 regarding changes to dealer agreements impacting or intended to address dealer protection laws and their requirements. Finally, to be clear and resolve any uncertainty that may exist, the Court understands this request to be limited to surface drills business line dealer agreements and this order to compel is limited accordingly.

> 3.   **Plaintiff's Second RFPs 7 and 8 (Regarding Georgia dealer protection law)**

Plaintiff's Second RFP 7 seeks documents that explain or discuss why some Defendant dealer agreements provide that Georgia law controls but other dealer agreements do not. RFP 8 asks Defendant to produce all documents prepared by Defendant that "mention or discuss Georgia dealer protection laws." Defendant objects to the requests as overly broad and unduly burdensome as they are not limited in time or scope and seek documents unrelated to the surface drills group at issue.

The Court finds Plaintiff has not shown the relevance of documents that mention or discuss Georgia dealer protection laws or documents explaining why some dealer agreements are governed by Georgia law. Plaintiff is claiming that Defendant violated *Kansas* dealer protection laws and no party has argued Georgia law governs or applies to their agreement. The fact that Defendant's principal place of business is located in Georgia and Georgia's dealer protection law is broad, as argued by Plaintiff, does not establish the relevance of these discovery requests.

Defendant's relevancy and overly broad objections to RFPs 7 and 8 are therefore sustained. Plaintiff's motion to compel with respect to RFPs 7 and 8 is denied.

4.  **Plaintiff's Second RFPs 9, 10, and 17 (Regarding other dealers'**
     **agreements and non-performance/ breach letters)**

Plaintiff's Second RFPs 9, 10, and 17 ask Defendant to produce its agreements with other

dealers, non-performance or breach letters Defendant sent to other dealers, and documents

related to Defendant's termination of other dealers. Defendant objects to the requests as overly

broad as they are not limited in scope and unduly burdensome and not proportional to the needs

of the case as they seek information unrelated to the surface drills group at issue. Responding to

these requests would call for Defendant to search for and potentially interview dozens of

individuals in unrelated business lines comprising dozens of non-surface drill dealers and

resellers.  Defendant states in its supplemental response to RFP 9 that it has already produced

copies of dealer agreements with the other fifteen dealers in its surface drills business line.

It is not initially apparent how agreements, non-performance letters and other documents

between Defendant and its *other* dealers are relevant to the claims and defenses in this case.

However, in Plaintiff's Addendum "A" summary of the disputed discovery requests and

objections, Plaintiff asserts these requests are relevant to show it was treated differently from

other dealers by Defendant because K.S.A. 16-1306 requires the "manner of enforcement" to be

the same among dealers. Plaintiff additionally argues that these requests are relevant to

Defendant's knowledge of dealer protection laws.

The Court finds Plaintiff has sufficiently shown the relevance of agreements, non-

performance or breach letters, and documents related to Defendant's termination of other

similarly situated dealers, as sought by RFPs 9, 10 and 17. The requested documents are relevant

to whether Defendant terminated Plaintiff's agreement "without good cause." A retailers'

interactions with "similarly situated dealers" are specifically referenced in the statute. K.S.A. 16-

1306 provides "[g]ood cause means failure by a retailer to substantially comply with essential

and reasonable requirements imposed upon the retailer by the contract if such requirements are not different from those requirements imposed on similarly situated dealers either by their terms or in the manner of their enforcement." Discovery pertaining to other similarly situated dealers' agreements and how Defendant enforced those agreements would therefore be relevant in this case.

Defendant appears to acknowledge the relevance of the requested information related to other dealers who are similarly situated to Plaintiff. In its supplemental responses to RFPs 9, 10, and 17, Defendant maintains its surface drills limitation but offers to expand its search for non-privileged responsive document if Plaintiff narrows the request to a few dealers that Plaintiff believes are similarly situated. The Court will require Defendant to search for and produce additional non-privileged documents responsive to RFPs 9, 10, and 17 for ten dealers that Plaintiff believes are similarly situated. However, the ten dealers selected by Plaintiff must be chosen from one of the following five business lines: (1) Stationary crushers and screens, (2) Mobile crushers and screens, (3) Underground drill rigs and bolters, (4) Surface drill rigs, and (5) Underground loaders and trucks.

Defendant has already produced copies of dealer agreements with the other fifteen dealers in its surface drills business line. The Court finds requiring Defendant to produce its agreements, non-performance letters, and other documents for the surface drills business line (to the extent not already produced) and another 10 similarly situated dealers is a reasonable compromise to address Defendant's unduly burdensome objection. This proportional approach balances the potential benefit to Plaintiff against the undue burden placed upon Defendant. The motion to compel with respect to RFPs 9, 10, and 17 is therefore granted in part. Defendant shall produce all non-privileged documents responsive to RFPs 9, 10, and 17 for its surface drills

business line and for ten dealers that Plaintiff identifies as similarly situated. Defendant shall produce these documents within fourteen (14) days from the date Plaintiff provides Defendant with a list of ten similarly situated dealers each operating in one of the five business lines suggested by Plaintiff and identified above.

5.  **Plaintiff's Second RFP 12 (Regarding desirability of sending non-performance letters)**

Plaintiff's Second RFP 12 seeks all documents prepared by or for Defendant in the last 10 years that "discuss or explain why sending a non-performance letter may or may not be desirable." Defendant objected to the request as overly broad, unduly burdensome, and not proportional to the needs of the case as it seeks information unrelated to the surface drills group at issue.

The relevancy of the documents sought by RFP 12 is not apparent on its face, and Plaintiff has not shown relevance to any claim or defense in the case. Although the request is limited to the last ten years, any marginal relevance and likely benefit of the discovery sought by this request is outweighed by the substantial burden on Defendant in searching for and producing documents that "discuss or explain why sending a non-performance letter may or may not be desirable." Defendant's objections to RFP 12 are sustained. The motion to compel with respect to RFP 12 is denied.

B.  **Plaintiff's Second RFP 22 (Regarding financial statements)**

Plaintiff's Second RFP 22 requests production of "[a] current balance sheet and income statement" for Defendant and "Sandvik, Inc., a Delaware corporation and Sandvik Finance B.V., a Netherlands corporation, and Sandvik AB, a Swedish corporation." Defendant asserts a relevance objection and argues the request seeks documents from non-parties, which are separate and distinct legal entities from Defendant. Plaintiff argues the requested financial statements are

relevant to its punitive damages claims and Defendant is owned and controlled by its parent who produces consolidated financial statements. In its reply, Plaintiff suggests overruling the objection but not requiring the financial statements be produced until after a ruling on the dispositive motions.

The Court finds the relevancy of financial statements from the other Sandvik entities is not readily apparent, and Plaintiff has not otherwise shown how they would be relevant to its claim for punitive damages as these entities are not parties to this action. The fact they may be a parent or related to Defendant is not enough to compel discovery of their financial statements. This same issue has been addressed in *Industrial Elec. Engineering & Testing Co. v. Dynalectric Co.*,[29] where the court denied a motion to compel financial data relating to the present or former parent corporation of the defendant, noting the "entity is not a party to this action, nor is any recovery of damages, actual or punitive, sought against it." The Court therefore sustains Defendant's relevancy objection to RFP 22 to the extent it requests financial statements from the three other Sandvik entities.

Plaintiff has shown that current information of Defendant's net worth or financial condition is relevant to the claim for punitive damages. Generally, current information of a party's net worth or financial condition is considered relevant to the issue of punitive damages.[30] But courts may delay production of this information until closer to time of trial.[31]  Accordingly,

---

[29] No. 87-2555-V, 1990 WL 80411, at *1–2 (D. Kan. May 18, 1990).

[30] *See Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 625962, at *4 (D. Kan. Oct. 5, 1995) (finding current information of the plaintiffs' net worth or financial condition relevant to the issue of punitive damages).

[31] *See Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164 MLB-DWB, 2007 WL 950282, at *15 (D. Kan. Mar. 26, 2007) (delaying production of the defendants' financial information to a point closer to trial, noting the information produced will be more "current" then).

the Court will delay production of this financial information until after the Court rules on any dispositive motions, as suggested by Plaintiff. Defendant's motion to compel Plaintiff to produce documents responsive to RFP 22 is granted in part and denied in part.  Defendant shall produce its current balance sheet and income statement **fourteen (14) days after the earlier of:** (a) any ruling denying a dispositive motion concerning Plaintiff's claims and/or claims for punitive damages; or (b) the deadline for filing dispositive motions if there has been no dispositive motion directed to Plaintiff's claims which potentially support an award of punitive damages.

### C.      Defendant's Privilege Objections

Defendant also objected to Plaintiff's Second RFPs 2, 4–5, and 20 as seeking information protected from discovery by the attorney-client privilege and/or attorney work product doctrine. Defendant states in its response that it provided Plaintiff with a privilege log on December 23, 2022 that includes, among other things, two entries for the lone email chain containing privileged discussions from its in-house counsel in response to Mr. McCoy's email asking if the "decision is final." It is not clear from the briefing whether Defendant's privilege log included all responsive documents it is withholding.  **Within fourteen (14) days** from the date of this Memorandum and Order, Defendant shall serve an updated privilege log showing all documents responsive to Plaintiff's Second RFPs 2, 4–5, and 20, as limited herein, being withheld on the basis of attorney-client privilege or the work product doctrine.

**IT IS THEREFORE ORDERED** that Plaintiff's First Motion to Compel Discovery (ECF No. 56) is granted in part and denied in part as to Plaintiff's Second RFPs 2, 3, 4, 5, 9, 10, 17, 20, and 22; and denied as to Plaintiff's Second RFPs 7, 8, and 12, as set out above.

**IT IS FURTHER ORDERED** that __within fourteen (14) days__ from the date of this Memorandum and Order, Defendant shall produce all non-privileged documents responsive to Plaintiff's RFPs 2, 3, 4, 5, and 20, subject to the further limitations set out above.

**IT IS FURTHER ORDERED** that Defendant shall produce all non-privileged documents responsive to Plaintiff's Second RFPs 9, 10, and 17 for its surface drills business line and for ten dealers that Plaintiff identifies as similarly situated. Defendant shall produce these documents __within fourteen (14) days__ from the date Plaintiff provides Defendant with a list of the ten similarly situated dealers operating in the five business lines identified above.

**IT IS FURTHER ORDERED** that Defendant shall produce its current balance sheet and income statement responsive to Plaintiff's Second RFP 22 within __fourteen (14) days after the earlier of:__ (a) any ruling denying a dispositive motion concerning Plaintiff's claims and/or claims for punitive damages; or (b) the deadline for filing dispositive motions if there has been no dispositive motion directed to Plaintiff's claims which potentially support an award of punitive damages.

**IT IS FURTHER ORDERED** that __within fourteen (14) days__ from the date of this Memorandum and Order, Defendant shall serve an updated privilege log showing all documents responsive to Plaintiff's Second RFPs 2, 4–5, and 20, as limited herein, being withheld on the basis of the attorney-client privilege or the work product doctrine.

IT IS SO ORDERED.

Dated June 23, 2023, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge