UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROADBUILDERS MACHINERY AND SUPPLY
CO., INC. ,

        Plaintiff,

        v.

SANDVIK MINING AND CONSTRUCTION
USA, LLC,

        Defendant.

Case No. 2:22-cv-2331-HLT-TJJ

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Rule 37 Sanctions (ECF No. 92).

Plaintiff seeks discovery sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(A)(i) based upon

Defendant's alleged failure to produce discovery regarding its knowledge of state dealer

protection laws as ordered by the Court's June 23, 2023 Memorandum and Order (ECF No. 67)

("Discovery Order").  As explained below, Plaintiff's motion is granted in part and denied in

part. The motion is denied as to Plaintiff's request for the specific sanction of deeming a fact

admitted under Fed. R. Civ. P. 37(b)(2)(A)(i). The motion is granted insofar as Plaintiff will be

awarded its reasonable expenses incurred to compel production of the discovery at issue from

Defendant.

## I.      Factual and Procedural Background

Plaintiff, an industrial and construction equipment dealer, brings this wrongful

termination and breach of contract action against Defendant, a supplier of mining and

construction machinery and equipment. Plaintiff alleges Defendant terminated its Distributor

Sales and Service Agreement on July 25, 2022 without good cause, without proper notice, and

without a chance to cure any alleged cause for termination, all in violation of the Kansas Outdoor Power Equipment Act, K.S.A. 16-1301 *et seq.* ("KOPEA"). Plaintiff's agreement and relationship with Defendant was managed as part of Defendant's surface drills business group.

### A.    History of the Discovery Disputes and Defendant's Surface Drills Group Discovery Limitation

Plaintiff filed this lawsuit on August 19, 2022, and served its first set of interrogatories upon Defendant in November 2022. Plaintiff's First Interrogatory 5 asked Defendant to explain when and how it first learned that some states have legal restrictions on when and/or how it can terminate distributors, and to identify all persons it employed who knew of the restrictions/conditions. In its initial response, served December 14, 2022, Defendant stated:

> [C]ertain individuals in its surface drills group were aware that some States had legal restrictions on when and/or how it can terminate certain distributors but it was unaware that any such legal restriction applied to [Plaintiff] outside the terms of its agreement with [Plaintiff] until [Plaintiff] filed suit. By way of further response, after [Plaintiff] first claimed a violation of the Kansas Outdoor Power Equipment Dealership Act via its lawsuit and claimed that they should not have been terminated, [Defendant] reinstated [Plaintiff].[1]

On December 20, 2022, Defendant served a supplemental response to Interrogatory 5, asserting an objection that the interrogatory was overly broad, unduly burdensome, and not relevant because it was "not limited in scope to surface drill dealers."[2] Subject to these new objections, Defendant repeated its earlier response to Interrogatory 5.

Plaintiff also served a first set of requests for production ("RFPs"), including Plaintiff's First RFP 12, which requested documents mentioning or relating to Defendant's knowledge of state dealer protection laws relating to eight categories. Defendant served its responses

---

[1] Def.'s Objs. & Resps. to Pl.'s First Interrogs., ECF No. 56-3, at 4.

[2] Def.'s Suppl. Objs. & Resps. to Pl.'s First Interrogs., ECF No. 59-4, at 6.

December 14, 2022,[3] objecting that First RFP 12 was overly broad, unduly burdensome, and not relevant. Subject to its objection, it stated it was not in possession of any non-privileged responsive documents that "relate[] to surface drill dealers."[4]

Plaintiff did not file a motion to compel related to Defendant's answers and responses to the first set of interrogatories and RFPs, but did serve a second set of RFPs on Defendant on February 16, 2023.[5] Second RFPs 2–4, and 20 sought discovery of documents and information about Defendant's knowledge of dealer protection laws.[6] Plaintiff's Second RFP 9 sought other dealers' agreements with Defendant and transmittal emails/letters for 25 identified dealers.[7] Defendant served its responses on March 20, 2023,[8] objecting to Second RFPs 2–4 as overly broad, unduly burdensome, and not relevant because they seek information "unrelated to the surface drills group at issue," and stated it was not in possession, custody, or control of any documents responsive to the requests as they "related to surface drill dealers prior to [Plaintiff's]

---

[3] *See* Def.'s Cert. of Serv., ECF No. 28.

[4] Def.'s Suppl. Objs. & Resps. to Pl.'s First Req. for Docs., ECF No. 59-11, at 5–6.

[5] *See* Pl.'s Cert. of Serv., ECF No. 36.

[6] Plaintiff's Second RFP 2 asked Defendant to produce documents that explain or discuss how dealer protection laws impact how Defendant manages or interacts with its dealers/distributors. RFP 3 sought documents sent to Defendant by anyone that mention dealer protection laws or any regulatory or legal restrictions on how Defendant manages or interacts with its dealer/distributors, or which suggests such laws/regulations might impact any dealer agreement. RFP 4 asked Defendant to produce documents prepared and/or presented by Defendant that mention or explain how dealer protection laws may impact how suppliers/manufacturers manage or interact with their dealers/distributors.

[7] Plaintiff's Second RFP 9 sought all dealer agreements, including all draft and/or edited versions, transmittal letters/emails, and documents explaining expectations of how dealer laws impact dealer agreements.

[8] *See* Def.'s Cert. of Serv., ECF No. 42.

lawsuit."[9] Defendant similarly objected to Second RFP 9 as seeking information "concerning non-surface drill dealers."[10]

On March 31, 2023, the parties jointly emailed the Court to request a discovery conference on their discovery disputes, including the scope of Plaintiff's Second RFPs.[11] Their disputes focused primarily on the requests for documents regarding Defendant's knowledge of dealer protection laws and Defendant's proposed limitation on the discovery requests to its surface drills group.

On April 6, 2023, the Court conducted a discovery conference,[12] during which it ordered the parties to confer in good faith regarding the scope of the disputed RFPs. The Court also provided guidance it would find "the scope [of the discovery requests] is likely somewhat broader than just the surface drills group but narrower than all Defendant's product lines."[13]

On April 14, 2023, Defendant served supplemental responses and objections to Plaintiff's Second RFPs,[14] but maintained its objections and again limited the scope of its responses to the surface drills group. On April 19, 2023, Plaintiff filed its motion to compel.  Plaintiff requested, *inter alia*, the Court overrule Defendant's limitation of its discovery responses to its surface drills business group and order Defendant to produce documents responsive to Plaintiff's

---

[9] Def.'s Resps. & Objs. to Pl.'s Second Req. for Docs., ECF No. 56-4, at 2–3.

[10] *Id.* at 5.

[11] Plaintiff's Second RFPs 1–4, 8, 9, 19, and 20 were the specific discovery requests seeking documents regarding Defendant's knowledge of dealer protection laws discussed at the discovery conference.

[12] *See* Apr.7, 2023 Order Memorializing Rulings from Apr. 6, 2023 Disc. Conf., ECF No. 51, at 4.

[13] *Id.*

[14] Def.'s Suppl. Resps. & Objs. to Pl.'s Second Req. for Docs., ECF No. 62-6.

discovery requests regarding Defendant's knowledge of dealer protection laws (Second RFPs 2–4 and 20) and other dealers' agreements and non-performance/breach letters (Second RFPs 9, 10, and 17).

### B.     The Court's June 23, 2023 Discovery Order

On June 23, 2023, the Court issued its Discovery Order granting in part and denying in part Plaintiff's motion to compel discovery. Pertinent here, the Court rejected Defendant's proposed discovery limitation to its surface drills business group for Plaintiff's discovery requests seeking information regarding Defendant's knowledge of dealer protection laws.[15] It ordered Defendant to produce all non-privileged documents responsive to Plaintiff's Second RFPs 2–4, and 20 (regarding Defendant's knowledge of dealer protection laws), but limited to the ten-year time period January 1, 2012 through July 25, 2022, and further limited to five of Defendant's business line company divisions.[16]  The Court found Plaintiff had sufficiently shown the requested discovery was relevant to Plaintiff's claim that Defendant knew termination of the agreement was prohibited and proceeded recklessly (punitive damages).[17]  The Court also ordered Defendant to produce all non-privileged documents responsive to Plaintiff's Second RFPs 9, 10, and 17 (other dealers' agreements and non-performance/breach letters) for its surface drills group and for ten dealers that Plaintiff identified as similarly situated and operating in five additional business lines identified.[18]

---

[15] June 23, 2023 Mem. & Order, ECF No. 67, at 8–10.

[16] *Id.* at 11–12. The five business lines were: (1) Stationary crushers and screens, (2) Mobile crushers and screens, (3) Underground drill rigs and bolters, (4) Surface drill rigs, and (5) Underground loaders and trucks.

[17] *Id.* at 6–7.

[18] *Id.* at 15–16.

Plaintiff provided its list of ten similarly situated dealers to Defendant on July 5, 2023.[19] That list included dealers American State Equipment and Diesel Machinery, Inc.[20]

### C.    Defendant's Second Supplemental Responses and Production

On July 7, 2023, Defendant served its Second Supplemental Responses to Second RFP 3 and 9.[21] Defendant produced 48 documents responsive to Second RFP 3 and stated no responsive, privileged documents had been withheld.[22] With respect to Second RFP 9, Defendant responded it had already produced copies of its dealer agreements with its surface drills dealers, and it would search for and produce, by July 19, 2023, any additional responsive non-privileged documents in its custody, possession or control concerning its surface drills dealers and the list of ten dealers Plaintiff identified on July 5, 2023. Defendant also noted if any responsive, privileged documents were withheld from production, it would contemporaneously log the documents in its privilege log.[23]

---

[19] Def.'s Third Suppl. Resps., ECF No. 98-6, at 2 n.1.

[20] July 5, 2023 Letter, Ex. 7 to Def.'s Resp, ECF No. 98-7, at 4. The ten similarly situated dealers identified by Plaintiff were: 1) Crushing Tigers; 2) American State Equipment; 3) Continental Equipment; 4) Diesel Machinery, Inc.; 5) Screen-Tec; 6) First Quality Equip. Co.; 7) Volvo Construction Equipment & Services; 8) Interval Equipment Solutions; 9) Ohio Crushing & Screening; and 10) American Material Processing.

[21] *See* Def.'s Cert. of Service, ECF No. 70.

[22] Def.'s Third Suppl. Resps., ECF No. 98-6, at 7. The documents were identified as SANDVIK003575–3580 and SANDVIK003595–3638. *Id.*

[23] *Id.* at 14. Defendant's *Third* Supplemental Responses repeat all its previous responses for each RFP, including its original, supplemental, and second supplemental responses.

### D.     Defendant's Third Supplemental Responses and Production

On July 19, 2023, Defendant served its Third Supplemental Responses to Plaintiff's

Second Request for Documents.[24] Defendant did not supplement Second RFP 3 again, but it

produced 876 additional documents as responsive to Second RFP 9 and served a third

supplemental response further stating:

> [Defendant] will continue to search for and produce any non-privileged documents
> in its custody, possession or control responsive to [Second RFP] 9, to the extent
> any additional responsive documents are located. To the extent any additional
> responsive, privileged documents are located but withheld from production, such
> documents will be contemporaneously logged in [Defendant's] privilege log.[25]

On July 26, 2023, Plaintiff's counsel sent an email to Defendant stating he reviewed the

additional 876 documents and noted Defendant did not produce any draft and/or edited versions

of any dealer agreement; any transmittal letters/emails (although it did produce a note from

ScreenTec apparently requesting certain edits); or any documents mentioning dealer laws.

Defendant responded it had produced everything required under the Court's Discovery Order

within its custody, possession, or control.[26]

### E.     Documents Obtained by Plaintiff from Subpoenaed Non-Party Dealers

In early August 2023, Plaintiff served subpoenas on four non-party dealers. Two

dealers—Diesel Machinery Inc. and American State Equipment—responded, producing emails

and draft dealer agreements that involve Defendant's employees and appear to discuss distributor

agreement termination clauses and their potential conflict with state law. One of the documents

---

[24] *See* Def.'s Cert. of Service, ECF No. 76.

[25] Def.'s Third Suppl. Resps., ECF No. 98-6, at 14–15. The documents were identified as
SANDVIK003639–004515. *Id.*

[26] July 27, 2023 Email, Ex. 9 to Pl.'s Mot., ECF No. 93-9, at 1.

Plaintiff obtained was an August 2021 email to Tim Winslow (Sales Manager for Defendant's Mobile Crushing and Screening division until April 4, 2023) from the general manager of Diesel Machinery Inc. ("Winslow email").  It references comments by Defendant's then in-house legal counsel, Jackie Haley, addressing whether Diesel Machinery's agreement provisions conflict with South Dakota state law. Another document obtained by Plaintiff shows emails from 2019 between the president and chief operating officer of American State Equipment and a contract paralegal of Defendant, on which Tab Siegrist (Defendant's Surface Drills manager) was copied, discussing whether a dealer agreement provision was in violation of Wisconsin dealer protection law ("Siegrist email").[27]

      **F.**      **September 1, 2023 Discovery Conference**

Armed with the newly obtained Winslow and Siegrist emails, and with the August 28, 2023 discovery deadline looming, Plaintiff's counsel contacted the Court to request a telephone conference, which precipitated yet another discovery conference being held on September 1, 2023. Plaintiff challenged the sufficiency of Defendant's production of documents responsive to Plaintiff's Second RFP 9, as compelled by the Court's Discovery Order, in light of the Winslow and Siegrist emails.[28] In addition, Plaintiff sought the Court's guidance regarding its notice to take Ms. Haley's deposition and its notice of intent to subpoena 27 of Defendant's dealers, to which Defendant objected as untimely.

---

[27] Siegrist email, ECF No. 119-5.

[28] Plaintiff's Second RFP 9 requested Defendant produce for 25 identified dealers: "All Dealer Agreements between [Defendant] and each of the following dealers including all draft and/or edited versions and all transmittal letters/emails, and all Documents explaining any expectations of how dealer laws might impact such Dealer Agreements." Def.'s Third Suppl. Resps., ECF No. 98-6, at 12. The Court's Discovery Order limited Second RFP 9 to ten similarly-situated dealers. Diesel Machinery, Inc. and American State Equipment were two of those dealers.

The Court questioned counsel at length regarding Defendant's document and email retention and destruction policies, as well as its preservation of and search for responsive documents, focusing extensively on the two exemplar emails, the Winslow and Siegrist emails, Plaintiff obtained by subpoena of non-party dealers. [29] At the discovery conference, Defendant explained that it did not produce the Winslow email because Mr. Winslow resigned in April 2023 and, pursuant to its routine destruction policy, his laptop was repurposed and email mailbox deleted soon after his employment with Defendant ended.

The Court ordered the parties to further confer in good faith regarding the Court's Discovery Order and whether Defendant had possession, custody, or control of documents and emails responsive to Plaintiff's Second RFP 9, which the Court ordered Defendant to produce and which Defendant did not produce because they were allegedly destroyed or are no longer in existence.[30]  If the parties could not agree on measures to resolve this dispute, Plaintiff was to file a motion under Fed. R. Civ. P. 37 on or before September 11, 2023, and request the specific sanctions or relief sought.

The Court also advised the parties it would likely allow the deposition of Ms. Haley be taken shortly after the discovery deadline, over Defendant's objection, given the additional information recently obtained by Plaintiff through discovery.[31] The Court granted Plaintiff's oral motion to extend the August 28, 2023 discovery deadline but *solely* for the purposes of completing the deposition of Ms. Haley and serving six additional non-party subpoenas.[32]

---

[29] Order Mem. Rulings From Sept. 1, 2023 Disc. Conf., ECF No. 89, at 2.

[30] *Id.*

[31] *Id.* at 3.

[32] *Id.* at 4.

Plaintiff filed this Motion for Rule 37 Sanctions on September 11, 2023. Plaintiff deposed Jackie Haley on September 15, 2023.[33] Although Plaintiff subsequently filed a Notice of Intent to Serv[e] Subpoenas (ECF No. 91) on six additional dealers, there is no indication those dealers were ultimately subpoenaed.

### G.    Defendant's Subsequent Document Production

On September 28, 2023, Defendant produced 289 additional documents (numbered 4537–4826) responsive to Plaintiff's Second RFP 9, which Defendant claims it collected from Tim Winslow and Tab Siegrist. On October 6, 2023, Defendant produced 718 additional documents (numbered 4827–5545). Included within this production were 136 documents responsive to Plaintiff's Second RFP 9 from Tim Winslow that Defendant claimed it was able to recover as previously "soft-deleted" emails, as well as documents from Tab Siegrist. Defendant also provided a 24-page privilege log withholding 182 documents based on attorney-client privilege,[34] and indicated it would update the privilege log to address Plaintiff's complaints of incompleteness by October 27, 2023.

On October 11, 2023, the Court conducted the pretrial conference in this case. During that conference, Plaintiff requested and was granted leave to file a supplement to its Motion for Rule 37 Sanctions after it reviewed Defendant's subsequent document production.[35] Plaintiff

---

[33] Am. Notice to Take Dep., ECF No. 90.

[34] Def.'s Priv. Log, ECF No. 119-1.

[35] Oct. 11, 2023 Min. Entry and Order, ECF No. 111.

filed its supplement on October 18, 2023.[36] Defendant was likewise granted leave to file a response to Plaintiff's supplement, which was filed on October 24, 2023.[37]

**II.      Defendant's Actions Warrant Discovery Sanctions Under Fed. R. Civ. P. 37**

Federal Rule of Civil Procedure 37(b)(2)(A) generally governs the issuance of sanctions when a party fails to obey or comply with a discovery order. Here, the discovery order in question is the Court's June 23, 2023 Discovery Order compelling Defendant to produce discovery responsive to Plaintiff's Second RFPs 3 and 9.

Based upon its review of Defendant's supplemental discovery responses and document production since the Discovery Order, as set out in detail above, the Court finds Defendant timely served its second and third supplemental responses and produced 876 documents responsive to Second RFP 9 on July 19, 2023, after Plaintiff identified ten similarly situated dealers on July 5, 2023. Following the September 1, 2023 discovery conference and after Plaintiff raised deficiencies with Defendant's production through its failure to produce the Winslow and Siegrist emails, Defendant thereafter produced 289 non-privileged documents on September 28, 2023 and another 718 non-privileged documents on October 6, 2023, to supplement its production from Winslow and Siegrist.

However, while Defendant eventually complied with the Court's Discovery Order, it did not do so until after Plaintiff requested and the September 1, 2023 discovery conference was held, during which the Court questioned Defendant why it failed to produce the Winslow and Siegrist emails (responsive to Plaintiff's Second RFP 9). Plaintiff previously contacted

---

[36] Pl.'s Suppl., ECF No. 118.

[37] Def.'s Opp'n to Plf.'s Suppl., ECF No. 122.

Defendant in late July about its failure to produce any draft and/or edited versions of any dealer agreement; any transmittal letters/emails (other than a note from ScreenTec requesting edits); and any documents mentioning dealer laws, as requested in Second RFP 9. Defendant's response to Plaintiff was that it had produced everything required under the Court's Discovery Order within its custody, possession, or control. Plaintiff then served subpoenas upon non-party dealers and obtained documents showing Defendant failed to produce the Winslow and Siegrist emails. Plaintiff then had to request the September 1st discovery conference with the Court before Defendant then belatedly produced responsive documents from Winslow and Siegrist. This was well after the discovery deadline and months after the Discovery Order's deadline for producing them.

Defendant's belated production of 289 additional responsive documents on September 28, 2023 and 718 new documents on October 6, 2023 (withholding 182 documents on the basis of attorney-client privilege), was more than two months after the July deadline set in the Discovery Order and a month after the August 28, 2023 discovery deadline. Defendant's delays and belated efforts to produce responsive documents—only after confronted with responsive emails it had not produced—essentially ran out the discovery clock on Plaintiff. The Court finds Defendant failed to timely obey or comply with the Court's Discovery Order compelling it to produce discovery responsive to Plaintiff's Second RFP 9.

Plaintiff argues Defendant failed to preserve evidence when it did not suspend its routine destruction policies prior to Mr. Winslow's resignation in April 2023.  This was discussed at the September 1, 2023 discovery conference and the Court ordered the parties to further confer in good faith regarding Defendant's production of documents responsive to the Court's Discovery Order to see if they could agree on measures to resolve their dispute. Although the parties were

not able to agree on measures before the September 11, 2023 deadline for Plaintiff to file its

motion, Defendant thereafter produced responsive documents, including the previously reported

"soft-deleted"[38] emails from Tim Winslow. As Defendant was subsequently able to produce

responsive documents from Mr. Winslow and there is no evidence that any responsive

documents from Mr. Winslow were not preserved and were lost, the Court need not address any

preservation issue raised by Plaintiff with respect to Mr. Winslow. The Court thus turns to what

sanctions are appropriate based solely upon Defendant's failure to timely obey or comply with

the Court's Discovery Order.

**III.       The Discovery Sanction Requested by Plaintiff is Not Just**

Plaintiff requests the Court impose a very specific sanction against Defendant under Fed.

R. Civ. P. 37(b)(2)(A)(i). It requests the Court deem admitted the following fact:

> At the time [Defendant] Sandvik terminated [Plaintiff] Roadbuilders, Sandvik
> knew Kansas had dealer protection laws which prohibit termination of dealers
> without good cause, require written notice of termination, and require a chance for
> the dealer to cure any claimed deficiency stated in the written notice of
> termination.[39]

Plaintiff alternatively requests that its requests for admissions 49–59 be deemed admitted.

In support of its requested sanction, Plaintiff argues that but for the documents it received

from subpoenaing other non-party dealers, Defendant would have gotten away with not

producing hundreds of responsive documents. Plaintiff argues the remedy of an admitted fact fits

perfectly as the discovery at issue goes to the same issue, which is Defendant's knowledge of

dealer protection laws.  Plaintiff contends that even if Defendant has recovered Mr. Winslow's

---

[38] Defendant explains that emails are "soft-deleted" once a user's license has been revoked.
Microsoft 365 retains the "soft-deleted" mailbox and all its contents until the deleted mailbox retention
period expires, which is 30 days. Def.'s Resp., ECF No. 98, at 10.

[39] Pl.'s Mot., ECF No. 92, at 21.

"soft-deleted" emails, Defendant's late-disclosure and production of responsive documents after discovery closed still justifies the requested sanction. Due to Defendant's late production, Plaintiff asserts it no longer has the ability to contest Defendant's privilege claims, obtain the documents withheld, and conduct follow up discovery, which severely prejudices it. Plaintiff argues the magnitude of Defendant's non-disclosure and the inability of Plaintiff to develop, pursue or present any of the evidence arising therefrom can only be rectified by establishing the targeted issue—Defendant's knowledge of Kansas dealer protection laws. Therefore, Plaintiff argues the most appropriate remedy is for the Court to find Defendant "knew Kansas had dealer protection laws which prohibit termination of dealers without good cause, require written notice of termination, and require a chance for the dealer to cure any claimed deficiency stated in the written notice of termination."

Defendant argues that it has always worked diligently and attempted in good faith to comply with the Court's orders and directives to remedy all of Plaintiff's stated concerns. Its initial document production was made in accordance with its written objections. Defendant contends even after the Court ordered it to produce documents from an additional ten dealers outside of its surface drills group, it worked diligently to search for and locate responsive documents. Although that process has been tedious and difficult, Defendant states it never knowingly or intentionally failed to search for or collect such documents. Defendant also calls the statement Plaintiff seeks to have deemed admitted "conclusively false." Defendant argues it would therefore be unjust for the Court to grant the relief requested by Plaintiff and take as established fact that Defendant had knowledge of Kansas dealer protection laws.

Federal Rule of Civil Procedure 37(b)(2)(A)(i) permits the Court to impose sanctions upon a party for not obeying an order to provide or permit discovery. Specifically included in the

list of seven available sanction is "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims."[40]  The court has considerable discretion when it comes to imposing discovery sanctions under Rule 37.[41] But the court's discretion is limited in that Rule 37(b)(A) requires that any sanction be both "just" and "related to the particular 'claim' which was at issue in the order to provide discovery."[42]  "Sanctions under Rule 37 are intended to ensure that a party does not benefit from its failure to comply, and to deter those who might be tempted to such conduct in the absence of such a deterrent."[43] A court should impose the least severe available sanction that will adequately deter and punish the wrongdoer and consider the purposes to be served by the imposition of sanctions.[44] The Tenth Circuit has outlined the purposes of sanctions as including: "(1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management."[45] But the primary goal of sanctions is to deter misconduct.[46] In considering the imposition of sanctions, the court must consider on a case-by-case basis whether a party's failure

---

[40] Fed. R. Civ. P. 37(b)(2)(A)(i).

[41] *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1320–21 (10th Cir. 2011). *See also National Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 642 (1976).

[42] *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992).

[43] *Kindergartners Count, Inc. v. DeMoulin*, 209 F.R.D. 466, 468 (D. Kan. 2002) (quoting *Starbrite Waterproofing Co., Inc. v. AIM Const. & Contracting Corp.*, 164 F.R.D. 378, 381 (S.D.N.Y. 1996)).

[44] *White v. Gen. Motors Corp.*, 908 F.2d 675, 684 (10th Cir. 1990).

[45] *Id.* at 683.

[46] *Id.*

was substantially justified or whether other circumstances make the imposition of sanctions inappropriate.[47]

In this case, the Court finds the specific sanction Plaintiff requests—deeming as admitted that Defendant knew Kansas had dealer protection laws prohibiting termination of dealers without good cause, requiring written notice, and opportunity to cure—would not be a "just" sanction under the factors set out above. The basis for the sanction is Defendant's failure to timely obey the Court's Discovery Order. Indeed, Defendant failed altogether to produce emails relevant to its knowledge of dealer protection laws until after their existence was discovered through third-party subpoenas. However, Defendant has now recovered and produced the previously soft-deleted emails of Mr. Winslow.  In addition, the Winslow and Siegrist emails Defendant failed to initially produce have belatedly been produced. But none of these emails address Kansas dealer protection laws. Instead, they address Defendant's knowledge of dealer protection laws in states other than Kansas. Thus, a sanction deeming as admitted that Defendant knew about *Kansas* dealer protection laws based upon the tardy production of these emails would not be just or appropriate. The extent to which Defendant had knowledge of *Kansas* dealer protection laws is a fact question which should be decided by the trier of fact upon presentation of the evidence, not a deemed admission of a fact based upon the discovery violations found here.

Plaintiff cites the deposition of Paul Painter, a retired "key account and dealer relations executive" of Defendant, as evidence consistent with its requested sanction. According to Plaintiff, Mr. Painter testified that he was aware of dealer protection laws and so was Defendant's "executive team," which consisted of the "vice president of the sales area, the

---

[47] *In re Indep. Serv. Orgs. Antitrust Litig.*, 85 F. Supp. 2d 1130, 1161–62 (D. Kan. 2000).

16

business line managers, the legal counsel, and the head of key accounts and dealer management."[48] Plaintiff also argues Mr. Painter's testimony was that he knew about Kansas dealer protection laws specifically. But this contradicts the Rule 30(b)(6) deposition testimony of Defendant's corporate representative, Avery Martin.[49] Clearly, a factual question exists as to whether Defendant was aware of dealer protection laws in *Kansas* at the time it terminated the Distributor Sales and Service Agreement with Plaintiff.

In addition to Mr. Painter's deposition, the Court also permitted Plaintiff to take the deposition of Defendant's former in-house counsel, Jackie Haley, after the discovery deadline had run, about her involvement in the emails discussing dealer protection laws in South Dakota and Wisconsin. And Plaintiff was allowed to serve six additional non-party subpoenas after the close of discovery, which it ultimately did not serve.  In light of the discovery Plaintiff was allowed to conduct and the factual question at issue, the Court finds it would be unjust to impose Plaintiff's requested sanction upon Defendant.

## IV.      Awarding Plaintiff's Reasonable Expenses is a Just Sanction

Although the Court denies the specific sanction requested by Plaintiff, the Court does find that discovery sanctions should be imposed against Defendant for its belated compliance with the Court's Discovery Order. Plaintiff has been significantly prejudiced by Defendant's belated September 28 and October 6, 2023 production of emails and documents responsive to Plaintiff's requests, as well as its late provision of an updated 24-page privilege log withholding 182 documents on October 27, 2023, after this motion was fully briefed. Defendant's document

---

[48] Painter Dep. 67:11-14, ECF No. 93-17.

[49] Martin Dep. 236:22-25, ECF No. 59-2.

production was two months after the deadline set in the Court's Discovery Order, a month after the August 28, 2023 discovery deadline and around the time the parties filed their motions for summary judgment. Plaintiff contacted Defendant about deficiencies in Defendant's third supplemental RFP discovery responses in late July 2023, but its response was it had produced everything. Plaintiff then had to subpoena four non-party dealers, obtain documents from them, contact and arrange for a discovery conference, and file its motion for sanctions before Defendant then produced additional responsive documents. This resulted in Plaintiff expending additional and unnecessary time and resources to obtain the discovery the Court ordered Defendant to produce months earlier. Additionally, Defendant's conduct wasted a considerable amount of the Court's time and resources.

In deciding the most appropriate and "just" sanction to impose under Rule 37, the Court imposes the least severe sanction available and tailors it so that Defendant does not benefit from its delays in complying with the Court's Discovery Order. In addition, the Court seeks to deter Defendant from being tempted to employ similar tardy discovery practices in the future. The Court finds the least severe and most "just" sanction is to award Plaintiff its reasonable expenses, including attorney's fees, incurred to obtain the discovery Defendant was ordered to produce by the Court's Discovery Order.

Accordingly, Plaintiff may file a motion for its Rule 37(a)(5) expenses with an affidavit itemizing its reasonable expenses. The motion and request shall be limited to Plaintiff's fees and expenses, including attorney's fees, incurred in briefing this Motion for Rule 37 Sanctions, subpoenaing Diesel Machinery, Inc. and American State Equipment, and preparing for and attending the September 1, 2023 discovery conference.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Rule 37 Sanctions (ECF No. 92) is granted in part and denied in part. The motion is denied as to Plaintiff's request for the specific sanction of deeming a fact admitted under Fed. R. Civ. P. 37(b)(2)(A)(i). The motion is granted insofar as Plaintiff will be awarded its reasonable expenses incurred to obtain the discovery at issue from Defendant.

**IT IS FURTHER ORDERED** that no later than **January 19, 2024**, Plaintiff may file a motion for its Rule 37(a)(5) expenses with an affidavit itemizing its reasonable expenses, including attorney's fees, as limited above. Defendant shall have until **February 2, 2024** to file a response. Plaintiff shall file any reply by **February 9, 2024**. The Court will then issue another order.

IT IS SO ORDERED.

Dated January 5, 2024, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge